EXHIBIT A

Renewing or in lieu of: EPR N09149338

**ACE American Insurance Company**
**436 Walnut Street**
**Philadelphia, PA 19106**

**POLICY NO:** EPR N0915842A

| ACE USA PROPERTY | DECLARATIONS |
|---|---|

| | Commission: 10% | Service Office: New York City, New York |
|---|---|---|

| **Insured:** | BAYSHORE RECYCLING CORPORATION | **Producer:** | MARSH & MCLENNAN AGENCY, LLC |
|---|---|---|---|
| **Address:** | 75 Crows Mill Road Keasbey, NJ 08832 | **Address:** | 1 Executive Drive, Suite 300 Somerset, NJ 08873 |

**Policy Period:** From February 16, 2014 at 12:01 A.M., to February 16, 2015 at 12:01 A.M. Standard Time at place of issuance.

To the extent that coverage in this policy replaces coverage in other policies terminating at noon standard time on the inception date of this policy, coverage under this policy shall not become effective until such other coverage has terminated.

The insurance afforded is only with respect to the specific part and coverages therein, the full title of which is set forth below the caption "Form."

| PERILS INSURED | COVERAGE PROVIDED | FORM | LIMIT OF LIABILITY | PREMIUM (Gross Annual) |
|---|---|---|---|---|
| AS PER FORMS AND ENDORSEMENTS ATTACHED | AS PER FORMS AND ENDORSEMENTS ATTACHED | AS PER FORMS AND ENDORSEMENTS ATTACHED | $40,000,000 per occurrence being 100% part of $40,000,000 per occurrence excess of deductibles. | $240,600.00 |
| | | | CERTIFIED TERRORISM NON-CERTIFIED TERRORISM | $5,163.00 $574.00 |
| ISSUED: STARR TECHNICAL RISKS AGENCY, INC. | | | **TOTAL** | $246,337.00 |

Forms and endorsements attached to policy at inception: Common Policy Conditions (IL00171198), Commercial Property Conditions (CP00900788), OFAC Advisory Notice to Policyholders (ILP0010104) Manuscript Wordings (Pages 1-39), Appendices A-C (Pages 40-43), Endorsement Nos. 1-18

Surcharges at inception:

| New Jersey Property Liability | $2,217.04 | | |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | **TOTAL SURCHARGES** | $2,217.04 |

Signature of Authorized Agent    Located at New York City, New York    3/12/2014

UW6033B

This Declaration and Form(s), with Policy Standard Conditions and Endorsements, if any, issued to form a part thereof, completes the above numbered policy.

UW6033B

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which make insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998 ☐

COMMERCIAL PROPERTY

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

**A. CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this Coverage Part.

**B. CONTROL OF PROPERTY**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**C. INSURANCE UNDER TWO OR MORE COVERAGES**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**D. LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

**1.** There has been full compliance with all of the terms of this Coverage Part; and

**2.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

**E. LIBERALIZATION**

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

**F. NO BENEFIT TO BAILEE**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**G. OTHER INSURANCE**

**1.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

**2.** If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**H. POLICY PERIOD, COVERAGE TERRITORY**

Under this Coverage Part:

**1.** We cover loss or damage commencing:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

**2.** The coverage territory is:

**a.** The United States of America (including its territories and possessions);

**b.** Puerto Rico; and

**c.** Canada.

**I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

**1.** Prior to a loss to your Covered Property or Covered Income.

**2.** After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

    **a.** Someone insured by this insurance;

    **b.** A business firm:

        **(1)** Owned or controlled by you; or

        **(2)** That owns or controls you; or

    **c.** Your tenant.

This will not restrict your insurance.

Copyright, ISO Commercial Risk Services, Inc.,  1983, 1987

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

IL P 001 01 04                              © ISO Properties, Inc., 2004                              **Page 1 of 1**

# BAYSHORE RECYCLING CORPORATION

1. **NAMED INSURED**

   **Bayshore Recycling Corporation** its affiliated, subsidiary, and associated companies and/or corporations or other business organization as to which **Bayshore Recycling Corporation** shall own a majority interest, and or shall exercise or have the right to exercise, control of the conduct of the business thereof, as now exist or may hereafter be constituted or acquired including their interests as may appear in partnerships or joint ventures.

   **HEREINAFTER REFERRED TO AS THE "NAMED INSURED"**

   **MAILING ADDRESS**

   75 Crows Mill Road
   Keasbey, NJ  08832

2. **TERM OF INSURANCE**

   This policy attaches and covers for the period of February 16, 2014 to February 16, 2015, beginning and ending at 12:01 a.m., standard time, at the location of the property involved.

3. **LIMIT OF LIABILITY**

   This Company's liability for loss or damage in any one occurrence is $40,000,000, all items combined, subject to the following sublimits of liability.

   **SUBLIMITS:** Sublimits are per occurrence unless specified otherwise

| | |
|---|---|
| $   5,000,000 | Earth Movement – Per Occurrence and Annual Aggregate except; |
| NO COVERAGE | Earth Movement in the State of California, Alaska or Hawaii – Per Occurrence and Annual Aggregate except; |
| NO COVERAGE | Earth Movement in New Madrid and Pacific Northwest Seismic Zones per Appendix A and B – Per Occurrence and Annual Aggregate |
| | The maximum payable for all Earth Movement losses in any one policy year shall in no event exceed $5,000,000 |

# BAYSHORE RECYCLING CORPORATION

| | |
|---|---|
| $ 2,000,000 | Flood – Per Occurrence and Annual Aggregate except; |
| $ 2,000,000 | Flood – for location(s) wholly or partially situated in Special Flood Hazard Areas A, A1-A30, AE, AH, AO, AR, A99, AOVEL, V, V1-V30 and VE as defined by the Federal Emergency Management Agency (FEMA) - Per Occurrence and Annual Aggregate |
| | The maximum payable for all Flood losses in any one policy year shall in no event exceed $2,000,000 |
| $ 25,000,000 | Named Windstorm except; |
| NO COVERAGE | Named Windstorm in Florida and Tier 1 Counties; |
| $ 500,000 | Accounts Receivable; |
| $ 100,000 | Architects and Engineering Fees; |
| $ 3,000,000 | Business Interruption (Gross Earnings); |
| $ 500,000 | Contingent Time Element Coverage – Direct, except $100,000 as respects Indirect Suppliers/Receivers; |
| The greater of 25% of direct Property Loss or $250,000 | Debris Removal; |
| $ 50,000 | Defense Costs; |
| $ 5,000,000 | Demolition and Increased Cost of Construction; |
| $ 5,000,000 | EDP Media and Equipment; |
| $ 500,000 | Errors and Omissions; |
| $ 1,000,000 | Expediting Expense; |
| $ 2,000,000 | Extra Expense; |
| $ 25,000 | Fine Arts; |
| $ 25,000 | Fire Brigade Charges and Extinguishing Expense; |
| $ 500,000 | Leasehold Interest; |

# BAYSHORE RECYCLING CORPORATION

| | | |
|---|---|---|
| $ | 250,000 | Leased or Rented Equipment for the time period not to exceed 90 days; |
| $ | 100,000 | Miscellaneous Tools and Equipment ($10,000 maximum per item); |
| $ | 5,140,175 | Mobile Equipment (per schedule set forth on Endorsement No. 8); |
| $ | 3,000,000 | Off Premises Power/Service Interruption (Property Damage and Time Element Combined); |
| | 90 Days | Ordinary Payroll; |
| $ | 500,000 | Outdoor Property; |
| $ | 50,000 | Pollution/Contamination Extension – Per Occurrence and Annual Aggregate; |
| $ | 500,000 | Professional Fees; |
| $ | 50,000 | Property while being constructed, assembled erected or installed (Course of Construction). Coverage only applies when the total contract price does not exceed this sublimit. |

The following coverages are part of and not in addition to the overall Course of Construction sublimit:

$Excluded - Delay in Start Up
$Excluded - Soft Costs
$Excluded - Testing

| | | |
|---|---|---|
| $ | 1,000,000 | Rental Value; |
| $ | 50,000 | Rental Expense for equipment for time period not to exceed 30 days; |
| $ | 100,000 | Rigger Liability (as per item 2 on the attached Policy Amendment Endorsement No. 12) |
| | NO COVERAGE | Research & Development; |
| | NO COVERAGE | Royalties; |
| $ | 50,000 | Transit; |

# BAYSHORE RECYCLING CORPORATION

| | | |
|---|---|---|
| $ | 500,000 | Unnamed Locations; |
| $ | 500,000 | Valuable Papers and Records; |
| $ | 500,000 | with $500,000 Annual Aggregate for Waterborne Equipment (equipment must be reported on the Mobile Equipment Schedule – Endorsement No. 8) as per attached Policy Amendment Endorsement No. 12 |

**BOILER AND MACHINERY SUBLIMITS**:

| | | |
|---|---|---|
| $ | 100,000 | Ammonia Contamination (applicable to loss or damage resulting from an Accident to an Object only); |
| $ | 100,000 | Consequential Damage (applicable to loss or damage resulting from an Accident to an Object only) |
| $ | 100,000 | Contingent Time Element (applicable to loss or damage resulting from an Accident to an Object only) |
| $ | 250,000 | Demolition and Increased Cost of Construction (applicable to loss or damage resulting from an Accident to an Object only) |
| $ | 100,000 | Data Restoration (applicable to loss or damage resulting from an Accident to an Object only) |
| $ | 100,000 | Extra Expense (applicable to loss or damage resulting from an Accident to an Object only) |
| $ | 100,000 | Hazardous Substance (applicable to loss or damage resulting from an Accident to an Object only) |
| $ | 250,000 | Newly Acquired Property (90 days reporting) if not reported to the Company in that 90 day period then coverage ceases. (applicable to loss or damage resulting from an Accident to an Object only) |
| $ | 250,000 | Service Interruption (applicable to loss or damage resulting from an Accident to an Object only) |
| $ | 100,000 | Water Damage (applicable to loss or damage resulting from an Accident to an Object only); |

# BAYSHORE RECYCLING CORPORATION

**TIME LIMITS:**  In addition to the Time Limits shown elsewhere in the policy, the following apply:

| | |
|---|---|
| <u>30</u> Consecutive Days | Civil or Military Authority |
| <u>30</u> Consecutive Days | Ingress/Egress |
| <u>30</u> Consecutive Days | Impounded Water |
| <u>90</u> Consecutive Days | Extended Period of Indemnity |
| <u>90</u> Consecutive Day period but not to exceed $<u>1,000,000</u> per location | Newly Acquired Locations |

The above Sublimits are part of and not in addition to the Policy Limit of Liability.

The maximum Sublimit amount collectible under this policy shall be the Sublimit applicable for all loss or damage resulting from a peril insured against by this policy, regardless of any other Sublimit involved in this policy.

**WAITING PERIOD:**

Coverage is provided by this policy only if the corresponding Waiting Period specified is exceeded by the period of interruption of the Insured's business.  If the Waiting period is exceeded, then the corresponding coverage will apply in excess of the Policy Deductibles.

| | |
|---|---|
| <u>24</u> Consecutive Hours | Civil or Military Authority |
| <u>24</u> Consecutive Hours | Ingress/Egress |
| <u>24</u> Consecutive Hours | Off Premises Power/Service Interruption |

4. **CURRENCY**

Unless otherwise specified, all amounts expressed herein are in the currency of the United States of America.

5. **DEDUCTIBLES**

A.   Each claim for loss, damage, or expenses arising out of any one occurrence shall be adjusted separately and from the amount of such adjusted claim shall be deducted the sum of:

**<u>Policy Deductible(s)</u>**

| | |
|---|---|
| PROPERTY DAMAGE: | $50,000 except: |
| Earth Movement: | $100,000 |
| Flood: | $250,000 |

# BAYSHORE RECYCLING CORPORATION

Windstorm: $250,000

Mobile
Equipment: 2% of values subject to minimum of $10,000

TIME ELEMENT: 48 Hours

**Exceptions to Policy Deductible(s):**

**Flood**

1)  As respects Locations wholly or partially situated in Special Flood Hazard Areas A, A1-A30, AE, AH, AO, AR, A99, AOVEL, V, V1-V30 and VE as defined by the Federal Emergency Management Agency:

    a) Property Damage – 2% of the 100% Total Insurable Value of the property insured at the Location where the physical damage occurred, per Location, subject to a minimum of $250,000 any one occurrence.

    b) Time Element –  48 Hours

B.  As respects FEMA Zones A or V or 100 Year Flood Zones (including all subzones),  the deductible amounts specified in Clause A. above shall be excess of available National Flood Insurance Program (NFIP) coverage, whether purchased or not,  being $500,000 for Buildings, $500,000 for Contents and $100,000 for Business Interruption.

C.  As respects Time Element, if the deductible is specified in hours or days, liability shall exist only for such part of the determined period of interruption in excess of the first number of hours or days, starting at the time of physical damage, stated in item A. above.

D.  When this policy insures more than one location, the deductible will apply against the total loss covered by this policy in any one occurrence except that a deductible that applies on a per location basis, if specified, will apply separately to each location where the physical damage occurred regardless of the number of locations involved in the occurrence.

E.  If two or more deductible amounts in this policy apply to a single occurrence, the total to be deducted shall not exceed the largest deductible applicable.  If two or more deductibles apply on a per location basis in an occurrence the largest deductible applying to each location will be applied separately to each such location.

F.  If separate Property Damage and Time Element deductibles are shown, then the deductibles shall be applied separately.

# BAYSHORE RECYCLING CORPORATION

G.  The deductible amounts specified in Clause A above shall not apply to general average contribution and salvage charges.

6.  **LOSS PAYABLE**

Loss, if any, shall be adjusted with and payable to the First Named Insured or their order, whose receipt shall constitute a release in full of all liability under this policy with respect to such loss.

7.  **TERRITORY**

This policy covers insured locations within the fifty (50) states of the United States of America plus the District of Columbia.

8.  **COVERAGE**

Except as hereinafter excluded, this policy covers:

**PROPERTY DAMAGE**:

A.  <u>Real and Personal Property</u>

The interest of the Insured in all real and personal property (including improvements and betterments) owned, used, or intended for use by the Insured including Personal Property of Others in the insured's Care Custody and Control, or hereafter acquired and including Property owned by the Insured while in course of construction, erection, installation and assembly, all while at locations insured hereunder or within 1000 feet of such location listed on the latest Schedule of Locations submitted to and accepted by the Company as of the policy inception date.

In the event of loss or damage, this Company agrees to accept and consider the Insured as sole and unconditional owner of improvements and betterments, notwithstanding any contract or lease to the contrary.

# BAYSHORE RECYCLING CORPORATION

Notwithstanding the above provision that a location must be scheduled on a Schedule of Locations in order to be covered, this policy is automatically extended (subject to all provisions and stipulations contained herein) to cover any Newly Acquired Real and Personal Property at any location rented, leased, purchased or acquired by the Insured after the inception date of this policy from the date of acquisition of such location <u>subject to the Number of Days and Sublimit of Liability shown in the TIME LIMITS set forth under Clause 3. LIMIT OF LIABILITY</u>, until reported to the Company or until an agreement is reached that the location will not be covered under this policy, whichever is soonest. This policy does not insure property at such newly acquired locations that are insured in whole or in part by any other insurance policy.

Newly Acquired Locations must be reported to the Company within the <u>TIME LIMIT shown under Clause 3. LIMIT OF LIABILITY</u> of the date of acquisition and accepted by the Company in writing; otherwise, after the applicable <u>TIME LIMIT</u> any unreported/unaccepted Newly Acquired Location will be considered an Unnamed Location and subject to the Unnamed Location sublimit.

References and Application. The following term(s) wherever used in this Policy means:

1) Location:

   a) as specified in the Schedule of Locations on file with Company at policy inception, or

   b) if not so specified in the Schedule of Locations: a Location is a building, yard, or bulkhead (or any group of the foregoing) bounded on all sides by public streets, clear land space or open waterways, each separation not less than fifty (50) feet wide. Any bridge or tunnel crossing such street, space or waterway will render such separation inoperative for the purpose of this References and Application.

   c) locations means more than one location.

2) Unnamed Location(s): A Location owned, leased or rented by the Insured, but not specified in the Schedule of Locations on file with the Company at policy inception.

**TIME ELEMENT**:

B. <u>Business Interruption - Gross Earnings</u>

With the exception of Newly Acquired Locations, coverage under this clause only applies to those locations where Business Interruption values have been reported.

# BAYSHORE RECYCLING CORPORATION

(1)    This Policy covers against loss directly resulting from necessary interruption of business conducted by the Insured and caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real or personal property as described in Clause 8A, Coverage - Real and Personal Property.

(2)    If such loss occurs during the term of this policy it shall be adjusted on the basis of ACTUAL LOSS SUSTAINED by the Insured resulting directly from such interruption of business, but not exceeding the reduction in Gross Earnings less charges and expenses which do not necessarily continue during the interruption of business, for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the property herein described as has been damaged or destroyed, commencing with the date of such damage or destruction and not limited by the date of expiration of this Policy. Due consideration shall be given to the continuation of normal charges and expenses, including payroll expense, to the extent necessary to resume operations of the Insured with the same quality of service which existed immediately preceding the loss.

"Ordinary payroll" is defined to be the entire payroll expense for all employees of the Insured except officers, executives, department managers, employees under contract, and other important employees.

Ordinary Payroll is limited to the number of consecutive days shown in the SUBLIMITS of Clause 3. LIMIT OF LIABILITY, immediately following the date of damage to or destruction of described property.

(3)    In the event of direct loss, damage, or destruction to property described in Clause 8A caused by any of the perils covered herein which results in an interruption of research and development activities which in themselves would not have produced income during the Period of Recovery, this policy shall cover the actual loss sustained of the continuing fixed charges and expenses, including ordinary payroll, directly attributable to such research and development activities.

(4)    However, this Company shall not be liable for any loss resulting from damage to or destruction of finished stock nor for the time required to reproduce said finished stock. Finished stock shall mean stock manufactured by the Insured in which the ordinary course of the Insured's business is ready for packing, shipment, or sale.

(5)    Resumption of Operations:  If the Insured could reduce the loss resulting from the interruption of business:

(a)    by a complete or partial resumption of operation of the property insured, whether damaged or not; or

# BAYSHORE RECYCLING CORPORATION

(b)    by making use of available stock, merchandise, or other property or facilities;

such reduction shall be taken into account in arriving at the amount of loss hereunder.

(6)    <u>Gross Earnings</u>:  For the purpose of this Insurance "Gross Earnings" are defined as the sum of:

1. Total net sales value of production;

2. Total net sales of merchandise; and

3. Other earnings derived from operation of the business;

 Less the cost of:

4. Raw stock from which such production is derived;

5. Supplies consisting of materials consumed directly in the conversion of such raw stock into finished stock or in supplying the service(s) sold by the Insured;

6. Merchandise sold, including packaging materials therefore; and

7. Service(s) purchased from outsiders (not employees of the Insured) for resale which do not continue under contract.

No other costs shall be deducted in determining Gross Earnings.  In determining Gross Earnings due consideration shall be given to the experience of the business before the date of damage or destruction and the probable experience thereafter had no loss occurred.

(7)    Definitions: The following terms, wherever used in this Policy, shall mean:

1.    "Raw Stock": material in the state in which the Insured receives it for conversion by the Insured into finished stock.

2.    "Stock in Process": raw stock which has undergone any aging, seasoning, mechanical or other process of manufacture at the location(s) herein described but which has not become finished stock.

3.    "Finished Stock": stock manufactured by the Insured which in the ordinary course of the Insured's business is ready for packing, shipment or sale.

# BAYSHORE RECYCLING CORPORATION

4.  "Merchandise": goods kept for sale by the Insured which are not the product of manufacturing operations conducted by the Insured.

5.  "Normal": the condition that would have existed had no loss occurred.

C.  Extra Expense

(1)  Extra Expense reasonably and necessarily incurred resulting from direct physical loss, damage, or destruction to real or personal property as described in Clause 8A Coverage – Real and Personal Property by any of the perils covered herein during the term of this policy.

(2)  "Extra Expense" means the excess of the total cost during the period of restoration of the damaged property chargeable to the operation of the Insured's business over and above the total cost that would normally have been incurred to conduct the business during the same period had no loss or damage occurred.

(3)  As soon as practicable the Insured shall resume normal operation of the business and shall dispense with such Extra Expense.

(4)  As respects Extra Expense, the following are also excluded:

a)  Any loss of income.

b)  Costs that normally would have been incurred in conducting the business during the same period had no physical loss or damage occurred.

c)  Cost of permanent repair or replacement of property that has been damaged or destroyed.

D.  Rental Value

(1)  Rental value actual loss sustained by the Insured resulting directly from the necessary untenantability caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real or personal property as described in Clause 8A but not exceeding the reduction in rental value less charges and expenses which do not necessarily continue during the period of untenantability.

(2)  For the purposes of this insurance, "rental value" is defined as the sum of:

(a)  the total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the Insured, and

# BAYSHORE RECYCLING CORPORATION

(b) the amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured, and

(c) the fair rental value of any portion of said property which is occupied by the Insured.

(3) <u>Experience of the Business</u>:

In determining the amount of rental value covered hereunder for the purpose of ascertaining the amount of loss sustained due consideration shall be given to the rental experience before the date of damage or destruction and to the probable experience thereafter had no loss occurred.

E. <u>Royalties</u>

(1) Loss of income to the Insured under royalty, licensing fees, or commission agreements between the Insured and another party which is not realizable due to direct physical loss, damage or destruction by any of the perils covered herein during the term of this policy to property of the type insured hereunder of the other party within the territorial limits of this policy.

(2) If such loss occurs during the term of this policy, it shall be adjusted on the basis of ACTUAL LOSS SUSTAINED of such income referred to in paragraph 1 above, which would have been earned had no loss occurred.

(3) <u>Resumption of Operations</u>:  The Insured shall influence, to the extent possible, the party with whom the agreement described in paragraph 1 above has been made to use any other machinery, supplies or locations in order to resume business so as to reduce the amount of loss hereunder and the Insured shall cooperate with that party in every way to effect this, but not financially, unless such expenditures shall be authorized by this Insurer.

(4) <u>Experience of the Business</u>:  In determining the amount of income derived from the agreement(s) described in paragraph 1 above for the purposes of ascertaining the amount of actual loss sustained, due consideration shall be given to the amount of income derived from such agreement(s) before the date of damage or destruction and to the probable amount of income thereafter had no loss occurred.

F. <u>Leasehold Interest</u>

(1) Pro rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the Insured's interest in:

# BAYSHORE RECYCLING CORPORATION

(a)    the amount of bonus paid by the Insured for the acquisition of the lease not recoverable under the terms of the lease for the unexpired term of the lease;

(b)    improvements and betterments to real property during the unexpired term of the lease which is not covered under any other section of this policy;

(c)    the amount of advance rental paid by the Insured and not recoverable under the terms of the lease for the unexpired term of the lease;

when property is rendered wholly or partially untenantable by any of the perils covered herein during the term of this policy and the lease is canceled by the lessor in accordance with the conditions of the lease or by statutory requirements of the appropriate jurisdiction in which the damaged or destroyed property is located; and

(2)    (a)    "Interest of the Insured as Lessee" when property is rendered wholly or partially untenantable by any of the perils covered herein during the term of this policy and the lease is canceled by the lessor in accordance with the conditions of the lease or by statutory requirements of the appropriate jurisdiction in which the damaged or destroyed property is located.

(b)    The **"Interest of the Insured as Lessee"** as referred to herein shall be paid for the first three months succeeding the date of the loss and the "Net Lease Interest" shall be paid for the remaining months of the unexpired lease.

(3)    Definitions:

The following terms, wherever used in this section shall mean as follows:

(a)    "Interest of the Insured as Lessee" is defined as:

(i)    the excess of the rental value of similar premises over the actual rental payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease.

(ii)    the rental income which would have been earned by the Insured from sublease agreements, to the extent not covered under any other section of this policy, over and above the rental expenses specified in the lease between the Insured and the lessor.

# BAYSHORE RECYCLING CORPORATION

(b) "Net Lease Interest**"** is defined as that sum, which placed at 6% interest compounded annually will be equivalent to the "Interest of the Insured as Lessee".

(4) This Company shall not be liable for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any license or by the Insured exercising an option to cancel the lease.

G.  **Provisions Applicable to Time Element Coverages:  (Including but not limited to Business Interruption, Extra Expense, Rental Value, Royalties, Leasehold Interest)**

(1) Period of Recovery: The length of time for which loss may be claimed (Not applicable to Leasehold Interest)

(a) shall not exceed such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair, or replace such part of the property as had been destroyed or damaged;

(b) and, such additional length of time to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

(i) the date on which the liability of the Company for loss or damage would otherwise terminate; or

(ii) the date on which repair, replacement, or rebuilding of such part of the property as has been damaged is actually completed;

but in no event for more than the number of days shown in the TIME LIMITS of Clause 3. LIMIT OF LIABILITY thereafter from said later commencement date;

(c) with respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, shall be determined as provided in (a) above but such determined length of time shall be applied to the experience of the business after the business has reached its planned level of production or level of business operation;

(d) shall commence with the date of such loss or damage and shall not be limited by the date of expiration of this policy.

# BAYSHORE RECYCLING CORPORATION

(2) <u>Expenses to Reduce Loss</u>: This policy also covers such expenses as are necessarily incurred for the purpose of reducing any loss under this policy, but in no event shall such expense exceed the amount by which the loss under this policy is thereby reduced.

(3) <u>Extension of Coverage</u>: This policy, subject to all provisions and without increasing the limits of this policy, also insures against loss directly resulting from damage to or destruction by the perils insured against, to:

   (a) <u>Contingent Time Element</u>:  Property of the type insured owned by a direct supplier which prevents the supplier of goods and/or services to the Insured from rendering their goods and/or services to the Insured, or property of the type insured owned by a direct receiver which prevents the receiver of goods and/or services from the Insured from accepting the Insured's goods and/or services, within the territorial limits of this policy.

   There is no liability for any loss or damage insured under Clause (3) (b) Service Interruption.

   (b) <u>Service Interruption</u>: Off-Premises utility and power stations, substations, transformer or switching or pumping stations, including Off-Premises poles, towers, and transmission or distribution lines, furnishing electricity, steam, water, gas or refrigeration within five (5) statute miles of the Insured premises.

   (c) <u>Impounded Water</u>:  dams, reservoirs, or equipment connected therewith when water, used as a raw material or used for power or for other manufacturing purposes, stored behind such dams or reservoirs is released from storage and causes an interruption of business as a result of lack of water supply from such sources, but such coverage is limited to the number of days shown in the TIME LIMITS of Clause 3. LIMIT OF LIABILITY from the first day of interruption.

(4) <u>Interdependency</u>:  If there is a loss at an insured location that involves interdependency at one or more other insured locations, the loss, including any resulting interdependency loss, will be adjusted based on the Time Element coverage that applies at the insured location where the direct physical loss or damage insured by this policy occurred.

# BAYSHORE RECYCLING CORPORATION

(5)     <u>Interruption by Civil or Military Authority</u>: This policy is extended to cover, starting at the time of physical damage, the actual loss sustained during the period of time but not to exceed number of days shown in the TIME LIMITS of Clause 3. LIMIT OF LIABILITY when, as a direct result of loss or damage by a peril insured against to property of the type insured within one (1) mile from the Insured's premises, access to real or personal property is prohibited by order of civil or military authority.

(6)     <u>Ingress/Egress</u>: This policy is extended to cover, starting at the time of physical damage, the actual loss sustained during the period of time but not to exceed number of days shown in the TIME LIMITS of Clause 3. LIMIT OF LIABILITY when, as a direct result of loss or damage by a peril insured against to property of the type insured within one (1) mile from the insured's premises, ingress to or egress from the Insured's premises is thereby prevented.

(7)     <u>Delay in Start Up</u>:    This policy is extended to cover the Actual Loss Sustained incurred by the Insured during the Period of Recovery due to the reasonable and necessary delay in startup of business operations directly resulting from physical loss or damage by a peril insured against to insured property under construction at an Insured Location.

(8)     <u>Soft Costs:</u>  This policy is extended to cover the Actual Loss Sustained incurred by the Insured of Soft Costs during the Period of Recovery arising out of the delay of completion of buildings and additions under construction directly resulting from physical loss or damage by a peril insured against to insured property under construction at an Insured Location.

<u>References and Application</u>.  The following term(s) wherever used in this Policy means:

a)     Soft Costs:

Expenses over and above normal expenses at Locations undergoing renovation or in the course of construction limited to the following:

(i)     Construction loan fees - the additional cost incurred to rearrange loans necessary for the completion of construction, repairs or reconstruction including; the cost to arrange refinancing, accounting work necessary to restructure financing, legal work necessary to prepare new documents, charges by the lenders for the extension or renewal of loans necessary.

# BAYSHORE RECYCLING CORPORATION

    (ii)    Commitment fees, leasing and marketing expenses - The cost of returning any commitment fees received from prospective tenant(s) or purchaser(s), the cost of re-leasing and marketing due to loss of tenant(s) or purchaser(s).

    (iii)    Additional fees - for architects, engineers, consultants, attorneys and accountants needed for the completion of construction, repairs or reconstruction.

    (iv)    Carrying costs - property taxes, building permits, additional interest on loans, realty taxes and insurance premiums.

(9)    <u>Idle Periods</u>:  This policy does not insure against time element loss for any period during which business would not have been conducted for any reason other than physical damage of the type insured against.

(10)    <u>Special Exclusions</u>:

This Company shall not be liable for any increase of loss resulting from:

    1.    Enforcement of any law ordinance or regulation whether Federal, State or Local regulating the construction, repair or demolition of buildings or structures, except as provided by Clause 19. Demolition and Increased Cost of Construction; or

    2.    Interference at the described premises, by strikers or other persons, with rebuilding, repairing or replacing the property or with the resumption or continuation of business; or

    3.    The suspension, lapse or cancellation of any lease, license, contract or order unless such suspension, lapse or cancellation results directly from the interruption of business, and then this Company shall be liable for only such loss as affects the Insured's earnings during, and limited to, the period of indemnity covered under this Policy; nor for any increase of loss due to fines or penalties for breach of contract or for late or non-completion of orders or for penalties of any nature, nor shall this Company be liable for any other consequential or remote loss.

H.    <u>Accounts Receivable</u>

(1)    All sums due the Insured from customers, provided the Insured is unable to effect collection thereof as the direct result of loss of or damage to records of accounts receivable;

(2)    Interest charges on any loan to offset impaired collections pending repayment of such sums made uncollectible by such loss or damage;

# BAYSHORE RECYCLING CORPORATION

(3)   Collection expense in excess of normal collection cost and made necessary because of such loss or damage;

(4)   Other expenses, when reasonably incurred by the Insured in reestablishing records of accounts receivable following such loss or damage.

For the purpose of this insurance credit card company charge media shall be deemed to represent sums due the Insured from customers until such charge media is delivered to the credit card company.

When there is proof that a loss of records of accounts receivable has occurred but the Insured cannot more accurately establish the total amount of accounts receivable outstanding as of the date of such loss, such amount shall be computed as follows:

(1)   The monthly average of accounts receivable during the last available twelve months shall be adjusted in accordance with the percentage increase or decrease in the twelve months average of monthly gross revenues which may have occurred in the interim.

(2)   The monthly amount of accounts receivable thus established shall be further adjusted in accordance with any demonstrable variance from the average for the particular month in which the loss occurred, due consideration also being given to the normal fluctuations in the amount of accounts receivable within the fiscal month involved.

There shall be deducted from the total amount of accounts receivable, however established, the amount of such accounts evidenced by records not lost or damaged, or otherwise established or collected by the Insured, and an amount to allow for probable bad debts which would normally have been uncollectible by the Insured.

I.   Transit

This policy is extended to cover personal property of the Insured, including the Insured's interest therein while such property is in due course of transit by any means of conveyance (except ocean marine) within and between the territorial limits of the policy.

(1)   VALUATION:

In the event of loss of or damage to insured property in due course of transit, the property shall be valued at the amount of invoice, including prepaid or advanced freight, if any, the profit or commission of the Insured as selling agent, and such other costs and charges as may have accrued and become legally due thereon since shipment.  In the absence of an invoice, the property shall be valued at its actual cash value at point of shipment.

# BAYSHORE RECYCLING CORPORATION

(2)    ADDITIONAL PROPERTY EXCLUSIONS APPLYING TO PROPERTY IN TRANSIT:

In addition to those property exclusions set forth in the policy, this Company shall in no event be liable for loss or damage to:

a)    the conveyance used as the mode of transportation, including any part of the equipment thereof;

b)    property insured under any marine import or export policy;

c)    airborne shipments unless by regularly scheduled passenger airlines or freight carriers.

d)    property shipped by mail or parcel post, from the time it passes into the custody of the Postal Service.

e)    waterborne shipments via the Panama Canal, and to and from Puerto Rico, the Virgin Islands, Alaska and Hawaii.

(3)    DEBRIS REMOVAL EXCLUSION CLAUSE:

Neither the Debris Removal Clause nor Pollution Cleanup provision of this policy shall extend to cover expense of removal of debris or pollutants resulting from loss or damage to property in transit.

(4)    ADDITIONAL EXCLUSION:

This clause does not insure against loss resulting from interruption of business, delay, loss of market or use, or indirect or consequential loss of any kind.

J.    <u>Off Premises Power</u>

This policy is extended to cover physical loss or damage to insured property at an insured location resulting from physical damage caused by the perils insured against to Off-Premises utility and power stations, substations, transformer or switching or pumping stations, including Off-Premises poles, towers, and transmission or distribution lines, furnishing electricity, steam, water, gas or refrigeration within five (5) statute miles of the Insured premises.

K.    <u>Testing</u>:

This policy is extended to cover physical loss or damage by a peril insured against to insured property under construction at an Insured Location while such property is undergoing Hot Testing during the Hot Testing Period.

# BAYSHORE RECYCLING CORPORATION

This additional coverage excludes Hot Testing of a prototype or developmental machinery and equipment or of used machinery and equipment.

<u>References and Application</u>.  The following term(s) wherever used in this Policy means:

Hot Testing Period:  that period of time beginning with the earlier of:

(a)  introduction into a system of feedstock or other materials for processing or handling, or

(b)  commencement of fuel or energy supply to a system

   and ending with the earliest of:

(a)  the property in course of construction is accepted by the owner, or

(b)  if specified, the number of consecutive days shown in Clause 3. LIMIT OF LIABILITY, or

(c)  the cancellation or expiration date of this policy.


ADDITIONAL EXCLUSION:

No coverage shall be provided under this clause unless all specified protective material and instrumentation is installed and activated.

In no event shall coverage be provided if supervisory or safety systems have been deliberately circumvented.

9.    **PERILS INSURED AGAINST**

This policy insures against all risk of direct physical loss of or damage to property described herein including general average, salvage, and all other charges on shipments covered hereunder, except as hereinafter excluded.

# BAYSHORE RECYCLING CORPORATION

10. **PERILS EXCLUDED**

This policy does not insure against loss, damage or expense caused by or resulting from:

A.     Wear and tear, inherent vice, latent defect, deterioration, depletion, smog, shrinkage, insects of any kind, vermin, evaporation, loss of weight, mold, changes in flavor or color or texture or finish, wet or dry rot, rust, fungus, corrosion, erosion, seepage, spillage or leakage at any valve, fitting, shaft seal, gland packing, joint or connection, unless resulting from direct physical loss or damage to the tanks, taps or pipes by an insured peril; the functioning of any safety or protective device; the breakdown of any Object while it is undergoing hydrostatic, pneumatic, gas pressure, or insulation breakdown tests, or is being dried out; unless other loss or damage ensues and then this policy will only cover for such ensuing loss.

B.     Settling, cracking, shrinkage, bulging or expansion  of walls, floors, foundations, or ceilings unless loss or damage from a peril insured herein ensues and then this policy shall cover for such ensuing loss or damage;

C.     Any fraudulent or dishonest act or acts committed alone or in collusion with others, by the Insured or any of the Insured's employees meaning only dishonest or fraudulent acts committed by the Insured or the Insured's employees, with manifest intent to:

(1)     cause the Insured to sustain such loss; or

(2)     obtain financial benefit for the Insured, Insured's employee, or for any other person or organization intended by the Insured or the employee to receive such benefit;

This exclusion does not apply to acts of destruction by employees, but theft by employees is not covered.

D.     Defective design or specifications, faulty or defective material, or faulty workmanship; however, this exclusion shall not apply to loss or damage resulting from such defective design or specifications, faulty material, or faulty workmanship;

E.     Errors in processing; damage sustained to that portion of the property Insured which is actually being worked  upon and directly resulting therefrom, or caused by any repairing, adjusting, servicing or maintenance operation.  Resulting loss or damage to other property covered hereunder, by perils insured against shall, however, be covered unless otherwise excluded.

F.     Any repairing, restoration or retouching process to Fine Arts or breakage of bric-a-brac, glassware, marble, porcelain, statuary or similar property resulting from the article being knocked over, whether intentional or accidental.

# BAYSHORE RECYCLING CORPORATION

G.  loss or damage caused by, resulting from, contributed to, or made worse by actual or threatened release, discharge, escape, dispersal, migration, or seepage of contaminants or pollutants, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to, or aggravated by any physical damage insured by this policy, unless loss or damage from a peril insured herein ensues, and then this policy shall cover such ensuing damage.

This exclusion shall not apply when loss or damage is directly caused by a peril insured against. This exclusion shall also not apply when loss or damage is directly caused by leakage or accidental discharge from automatic fire protection systems. This policy does not insure off-premises cleanup costs from any cause and the coverage afforded by this provision shall not be construed otherwise.

H.  (1)  warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending, or expected attack:

(a)  by any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces;

(b)  or by military, naval, or air forces;

(c)  or by an agent of any such government, power, authority, or forces;

(2)  any weapon employing atomic fission or fusion;

(3)  Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such occurrence;

(4)  seizure or destruction by order of public authority, except destruction by order of public authority to prevent the spread of, or to otherwise contain, control or minimize loss, damage or destruction not otherwise excluded under this policy;

(5)  risks of contraband or illegal trade.

I.  Nuclear reaction, nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate, or remote; or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this policy; except:

(1)  if fire ensues, liability is specifically assumed for direct loss by such ensuing fire but not including any loss due to nuclear reaction, nuclear radiation, or radioactive contamination;

# BAYSHORE RECYCLING CORPORATION

(2)    this Company shall be liable for loss or damage caused by sudden and accidental radioactive contamination including resultant radiation damage for each occurrence from material used or stored or from processes conducted on insured premises provided at the time of loss there is neither a nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction nor any new or used nuclear fuel on the insured premises.

J.    Confiscation, expropriation, nationalization, commandeering, requisition or destruction of or damage to property by order of the Government de jure or de facto or any public, municipal or local authority of the country or area in which the property is situated; seizure or destruction under quarantine or customs regulation.

K.    Authorities Clause:

Except as specifically stated in this policy or endorsement attached thereto, the company shall not be liable for loss, damage, costs, expenses, fines, or penalties incurred, sustained by or imposed on the Insured at the order of any Government Agency, Court, or other Authority arising from any cause whatsoever.

L.    Delay or loss of use or market, unless provided herein.

M.    Dampness of atmosphere and changes in temperature or humidity except as respects electronic data processing equipment and except as respects ensuing loss as described in Item A. of Consequential Loss Clause;

N.    The weight of a load exceeding the manufacturer's rated lifting or supporting capacity of any machine under the operating conditions at the time of loss.

O.    Mysterious disappearance; shortage found on taking inventory or any unexplained loss.

P.    Earth Movement and Flood as respects Newly Acquired Locations or Unnamed Locations.

Q.    The cost of removing any product subject to a Product Recall, whether the removal is voluntarily undertaken by the Insured or mandated by any executive, legislative, administrative or judicial order, and any Time Element losses resulting from such removal.

R.    The voluntary parting with title or possession of property if induced by any fraudulent act, trick or device or by false pretense.

S.    Loss or damage to the interior portion of buildings under construction from rain, sleet, snow, whether or not driven by wind, when installation of the roof, walls and windows of such buildings has not been completed.

T.    Freezing of plumbing, heating or fire protection systems in vacant properties.

# BAYSHORE RECYCLING CORPORATION

U.    Asbestos Removal - This policy does not insure against:

1.    asbestos material removal, unless the asbestos itself is damaged by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm or hail, vandalism, malicious mischief, leakage or accidental discharge from automatic fire protective systems;

2.    demolition or increased cost of reconstruction, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating asbestos material; or

3.    any governmental direction or request declaring that asbestos material present in or part of or utilized on any undamaged portion of the Insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified.

11.    **PROPERTY EXCLUDED**

This policy does not cover loss or damage to:

A.    Currency, money, deeds, notes and securities, evidences of debt or title, jewelry, furs, precious stones, bullion, and precious metals except when used as part of the Insured's manufacturing process.

B.    Land, and land improvements to or in land.

C.    Growing crops, standing timber, animals.

D.    Watercraft, aircraft, satellites, railroads and railroad rolling stock and motor vehicles licensed for highway use.

E.    Water, except water on the Insured's premises which is normally contained within any type of tank cistern, pond, piping or other process equipment.

F.    Docks, piers, wharves and property located offshore or beyond the shoreline, except that structures (and their contents) extending from land or shore are not to be considered as offshore.

G.    Owned overhead transmission and distribution lines and their supporting structures located beyond 1,000 feet from the Insured's premises.

H.    Property sold by the Insured under conditional sale, trust agreement, installment plan or other deferred payment plan after delivery to customers.

I.    Cranes, contractor's and subcontractor's equipment, except as provided by Mobile Equipment Endorsement No. 8.

# BAYSHORE RECYCLING CORPORATION

J.      Loss or damage to refractory linings other than damage directly caused by the sudden and unforeseen operation of an insured peril external to the furnace.

K.      Unmined minerals, coal or ore; Crude oil, natural gas or other minerals prior to the initial recovery above ground.

L.      Underground mines or mine shafts or any property within such mine or shaft.

M.      Underground and underwater piping, fittings, conduits, drains or flues, and contents; underground tanks, caverns, subterranean strata and their contents.

N.      Drilling and producing platforms, including rigs, derricks and equipment.

O.      Dams, watershafts, power tunnels, dikes, gates and flumes.

P.      Solar Panels.

12.    **VALUATION**

The value of the property shall be determined as follows at time and place of loss:

A.      Valuable Papers & Records:  The lesser of the cost to repair or replace the property with other of like kind and quality including the cost of gathering and/or assembling information; or, if not so replaced, actual cash value.

The term "Valuable Papers & Records" are defined as written, printed, or otherwise inscribed documents and records, including but not limited to books, maps, films, drawings, abstracts, deeds, mortgages, micro-inscribed documents, manuscripts and media, but not including money and/or securities.

The term "securities" shall mean all negotiable and non-negotiable instruments or contracts representing either money or other property, and includes revenue and other stamps in current use, tokens, and tickets, but does not include money.

The term "media" shall include, but not be limited to, programming records pertaining to electronic and electro-mechanical data processing or electronically controlled equipment, including the data thereon; as well as the materials on which data are recorded, including but not limited to magnetic tapes, floppy disks or hard disks.  It also includes paper tapes and punch cards.

B.      Buildings and structures, building equipment, plant equipment, machinery, machinery parts, tools, dies, patterns, office furniture, fixtures, and equipment and improvements and betterments:

# BAYSHORE RECYCLING CORPORATION

The amount actually expended by or in behalf of the Insured to repair, rebuild or replace, within a reasonable time, at the same or at another site, such property which has been damaged or destroyed by an insured peril, subject to the following conditions:

Liability hereunder shall not exceed the smallest of the following:

The costs to repair, rebuild or replace on the same site with new materials of like kind and quality, whichever is the smallest;

The actual expenditures incurred in repairing, rebuilding or replacing on the same or another site within the territorial limits of this policy, whichever is the smallest;

In the event of loss or damage to such property that is not repaired, rebuilt or replaced within two (2) years from original date of loss, the basis of recovery shall be the actual cash value of the property at the time of loss with proper deduction for depreciation, and shall in no event exceed what it would then cost to repair or replace the property with material of like kind and quality within a reasonable time after such a loss.

C.    Finished stock inventory:

The Insured's regular cash selling price at the location where the loss occurs, less any discounts and unincurred charges to which such property would have been subject had no loss occurred.  It is agreed, however, that for the purposes of claims settlements, loss shall be calculated using the basis employed to report values for premium purposes by the location sustaining the loss.

D.    Raw materials, supplies and other merchandise not manufactured by the insured:

The replacement cost; if not replaced, actual cash value.

E.    Stock in process:

The value of raw materials and labor expended plus the proper proportion of overhead charges.

F.    Electronic Data Processing Equipment:  at replacement cost if replaced; if not replaced, at Actual Cash Value on the date of loss.  "Replacement Cost" as used herein shall include:

(1)    Actual replacement by a like item of equipment or machinery; or

# BAYSHORE RECYCLING CORPORATION

(2)     Replacement by an unlike item of equipment or machinery; having technological advantages, as long as such item of equipment or machinery shall be capable of performing the same function as the replaced equipment or machinery, but such unlike equipment or machinery replacement shall not exceed the replacement cost of the damaged equipment or machinery.

G.     Electronic Data Processing Media:

On film, tape, disc, drum, cell and other magnetic recording or storage media (software) for electronic data processing that are not Valuable Papers, the actual reproduction cost of the property; if not replaced or reproduced, blank value of such property.  Actual reproduction cost shall mean the cost of reproducing the data thereon from duplicates or from originals of the previous generation, but no liability is assumed hereunder for the cost of gathering or assembling information or data for such reproduction.

H.     Fine Arts:  the lesser of:

(1) the reasonable and necessary cost to repair or restore such property to the physical condition that existed on the date of the loss,

(2) Cost to replace the article,

(3) The value, if any, stated on a schedule on file with the Company.

In the event that a Fine Arts article is part of a pair or set, and physically damaged article cannot be replaced or repaired or restored to the condition that existed immediately prior to the loss, the Company will be liable for the lesser of the full value of such pair or set or the amount designated on the schedule.  The Insured agrees to surrender the pair or set to the Company.

"Fine Arts" are defined as paintings, etchings, pictures, tapestries, rare or art glass, art glass windows, valuable rugs, statuary, sculptures, antique furniture, antique jewelry, bric-a-brac, porcelains, and similar property of rarity, historical value, or artistic merit, but excluding automobiles, coins, stamps, furs, jewelry, precious stones, precious metals, watercraft, aircraft, money or securities.

I.     Catalysts or refractory material:

The actual cash value of the material which equals the replacement cost at the time of loss or damage times the Remaining Useful Life Factor.  The term Remaining Useful Life Factor means the normal useful life of the material in months minus the number of months the material had been in use at the time of the loss or damage, divided by the normal useful life of the material in months.

# BAYSHORE RECYCLING CORPORATION

J.    All other property not defined above is subject to actual cash value. Actual Cash Value as used in this policy is defined as Replacement Cost less depreciation at time and place of loss.

13.    **DEFINITION OF OCCURRENCE**:

Occurrence, as used in this Policy, is defined as follows:

The term "occurrence" shall mean an event or a continuous exposure to conditions which causes direct physical loss or damage or destruction to property insured.  All damage or destruction resulting from a common cause, or from exposure to substantially the same conditions, shall be deemed to result from one "occurrence" except as modified herein.

a.    In respect of losses hereunder arising from Wind, meaning tornado, cyclone, hurricane, windstorm or hail, the term "occurrence" shall mean the sum total of all the Insured's losses sustained during any one period of seventy-two (72) consecutive hours commencing within the term of this Policy under the foregoing perils arising out of or caused by the same atmospheric disturbance.

b.    In respect of losses hereunder arising from riot, riot attending a strike or civil commotion, the term "occurrence" shall mean the sum total of all the Insured's losses sustained during any one period of seventy-two (72) consecutive hours commencing within the term of this Policy.

c.    The term Earth Movement shall mean earthquake or volcanic action including but not limited to landslide, tsunami, mud flow, earth sinking, earth rising and shifting and shall constitute a single claim hereunder, provided, if more than one Earth Movement shall occur within any period of seventy-two (72) hours during the term of this Policy, such Earth Movement shall be deemed to be a single loss within the meaning hereof.  This Company shall not be liable for any loss caused by any Earth Movement occurring before the effective date and time of this Policy, nor for any loss occurring after the expiration date and time of this Policy.

d.    The term Flood shall mean waves, tide or tidal waves, storm surge and the rising (including the overflowing or breaking of boundaries) of lakes, ponds, reservoirs, rivers, harbors, streams or similar bodies of water, the unusual and rapid accumulation or runoff of surface waters from any source, all whether driven by wind or not, or sewer or drain back-up resulting from any of the foregoing. With respect to the peril of Flood, any and all losses from this cause within a seventy-two (72) hour period shall be deemed to be one loss.

As respects all the foregoing, no single elected seventy-two (72) hour period shall overlap any other elected seventy-two (72) hour period and the Insured may elect the moment from which any period of seventy-two (72) consecutive hours shall be deemed to have commenced, this Company being responsible only for its proportion of the loss to the Insured in respect to the said elected period of seventy-two (72) hours.

# BAYSHORE RECYCLING CORPORATION

14. **FIRE BRIGADE CHARGES AND EXTINGUISHING EXPENSES**

This policy covers the following reasonable and necessary expenses resulting from a peril insured against:

    A.    fire brigade charges and other extinguishing expense for which the Insured may be assessed;

    B.    loss of fire extinguishing materials expended.

15. **POLLUTION/CONTAMINATION EXTENSION OF COVERAGE**

This policy covers the reasonable and necessary costs for the cleanup and removal of the actual not suspected presence of contaminants or pollutants from land and water at any premises insured hereunder directly resulting from a peril insured against, but not for more than the SUBLIMIT shown under Clause 3. LIMIT OF LIABILITY per occurrence and in the aggregate annually. Contaminants or pollutants means any material which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability, or loss of use to property insured hereunder, including, but not limited to, bacteria, fungi, virus, or hazardous substances.

No liability shall exist for pollution cleanup and removal at any location insured for personal property only, at any property covered under the Newly Acquired Locations, Unnamed Locations or Errors and Omissions coverage and unless such expenses are reported to the Company within one hundred eighty (180) days of the date of direct physical loss or damage or the expiration of this policy, whichever is earlier.

16. **DEBRIS REMOVAL**

This policy will pay the necessary expense incurred by the Insured during the term of this Policy for the removal of debris of the property covered hereunder from premises covered hereunder which may be occasioned by insured loss caused by any of the perils insured against in this Policy. The total liability in any one occurrence under this Policy for removal of debris shall not exceed the SUBLIMIT shown under Clause 3. LIMIT OF LIABILITY. This provision does not increase any amounts or limits of insurance in this Policy. In no event shall the combined loss for property and debris removal exceed the amount of insurance applying under the Policy to the property damaged.

Furthermore, the Company shall not be liable for more than the proportion of such debris removal expense as the amount of insurance under this Policy bears to the total amount of insurance on the property covered, whether or not all such insurance includes this clause, or is collectible or not. This insurance will not pay, under this clause, expenses to:

    1.    Remove pollutants, or debris defined as a Pollutant, from land or water, nor remove, restore or replace polluted land or water; or

# BAYSHORE RECYCLING CORPORATION

2.      Remove any property because of the enforcement of any law, ordinance, regulation or rule regulating or restricting the construction, installation, repair, replacement, demolition, occupancy, operation or other use of such property; or

3.      Remove or transport any property or debris to a site for storage or decontamination required because the property or debris is affected by pollutants, whether or not such removal, transport, or decontamination is required by law or regulation; or

4.      Remove any property or debris which discharges, releases, or escapes into or upon any watercourse or body of water above or below ground, on or off the insured premises.

No liability shall exist under this Debris Removal Clause unless such expenses are reported in writing to the Company within one hundred and eighty (180) days of the date of direct physical loss or damage or the expiration of this policy, whichever is earlier.

17.    **ARCHITECTS AND ENGINEERS FEES**

This Policy is extended to cover Architect's and/or Engineer's Fees including plans, drawings, blueprints, photographs and specifications for the repair of property damaged, as Insured against by this Policy.

18.    **DEFENSE COSTS**

This policy, subject to all of its provisions, also insures the costs and fees to defend any claim or suit against the Insured and/or its directors, officers and/or employees alleging physical loss or damage as insured against to property of others in the care, custody or control of the Insured to the extent of the Insured's liability therefore, even if such claim or suit is groundless, false or fraudulent; but the Company may without prejudice make such investigation, negotiation or settlement of any such claim or suit as it deems expedient.

19.    **DEMOLITION AND INCREASED COST OF CONSTRUCTION**

In the event of loss or damage under this policy that causes the enforcement of any law or ordinance in effect at the time of loss regulating the construction, repair, or use of property, this Company shall be liable for:

A.      the cost of demolishing the undamaged building(s) or structure(s)  including the cost of clearing the site;

B.      the proportion that the value of the undamaged part of the building(s) or structure(s) bore to the value of the entire property prior to loss;

# BAYSHORE RECYCLING CORPORATION

C.    increased cost of repair or reconstruction of the damaged and undamaged property on the same or another site within the same country and limited to the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site.  However, this Company shall not be liable for any increased cost of construction loss unless the damaged facility is actually rebuilt or replaced;

D.    any increase in the business interruption - gross earnings, extra expense, rental value and royalties loss arising out of the additional time required to comply with said law or ordinance.

This Company shall not be liable for any additional costs, resulting from the insured's obligation to comply with regulations mandated by any federal, state, municipal, or other authority, that existed prior to the loss from peril(s) insured hereunder.

No liability is assumed under this provision for any increase of loss associated with the enforcement of any law or ordinance, which requires the Insured, or others, to:

a.    test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess, the effects of Pollutants or Contaminants; or

b.    install process improvements or process modifications to property, when either is required or performed to comply with either OSHA regulations or other similar workplace safety regulations, or EPA, or other similar environmental regulations.

## 20.    EXPEDITING EXPENSE

This policy covers the reasonable extra cost of temporary repair and of expediting the repair of damaged property insured hereunder, including overtime and express freight or other rapid means of transportation.

## 21.    EXCESS INSURANCE

Excess insurance is insurance over the limit of liability set forth in this policy.  The existence of such excess insurance shall not prejudice the coverage provided under this policy nor will it reduce any liability hereunder.

## 22.    UNDERLYING INSURANCE

A.    Underlying insurance is insurance on all or any part of the deductible and against all or any of the perils covered by this policy including declarations of value to the carrier for hire.  The existence of such underlying insurance shall not prejudice or affect any recovery otherwise payable under this policy.

# BAYSHORE RECYCLING CORPORATION

B.  If the limits of such underlying insurance exceed the deductible amount which would apply in the event of loss under this policy, then that portion which exceeds such a deductible amount shall be considered "other insurance."

## 23.  OTHER INSURANCE

This policy may be issued in conjunction with certain other insurance policies written by or provided by the Company.  In the event such other insurance policies provide coverage for loss or damage also covered under this policy, coverage hereunder shall be excess and the limits of liability stated herein shall be inclusive of the limits provided by such other insurance policies and not in addition thereto.

## 24.  PRIMARY INSURANCE

Primary insurance shall mean locally admitted and/or nonadmitted policies issued to the Insured.

## 25.  SUBROGATION

A.  Any release from liability entered into by the Insured prior to loss hereunder shall not affect this policy or the right of the Insured to recover hereunder.  The right of subrogation against the Insured or subsidiary or affiliated corporations or companies or any other corporations or companies associated with the Insured through ownership or management is waived.

B.  In the event of any payment under this policy, the Company shall be subrogated to the extent of such payment to all the Insured's rights of recovery therefore.  The Insured shall execute all papers required and shall do anything that may be necessary at the expense of the Company to secure such right.  The Company will act in concert with any other interests concerned, i.e., the Insured and any other insurer participating in the payment of any loss as primary or excess insurers, in the exercise of such rights of recovery.

If any amount is recovered as a result of such proceedings, the net amount recovered after deducting the costs of recovery shall be divided between the interests concerned in the proportion of their respective interests.  If there should be no recovery, the expense of proceedings shall be borne proportionately by the interests instituting the proceedings.

# BAYSHORE RECYCLING CORPORATION

26. **SALVAGE AND RECOVERIES**

Where legally permitted and where loss payments under the Primary Insurance are not detrimentally affected, all salvages, recoveries, and payments, excluding proceeds from subrogation and underlying insurance recovered or received prior to a loss settlement under this policy shall reduce the loss accordingly. If recovered or received subsequent to a loss settlement under this policy, such net amounts recovered shall be divided between the interests concerned, i.e. the Insured and any other insurer participating in the payment of any loss, in the proportion of their respective interests.

27. **BRANDS OR TRADEMARKS AND/OR CONTROL OF DAMAGED MERCHANDISE:**

In case of damage to property bearing a brand or trademark or which in any way carries or implies the guarantee or the responsibility of the manufacturer or of the Insured, the salvage value of such damaged property shall be determined after removal in the customary manner of all such brands or trademarks or other identifying characteristics. The Insured shall have full rights to the possession and control of all damaged goods after suitable tests have indicated which goods have been damaged. The Insured and the Company, exercising reasonable discretion, shall mutually agree as to whether such damaged goods are suitable for reprocessing or for marketing and no such damaged goods as mutually determined by the Insured and the Company to be unfit for reprocessing or for marketing shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow the Company any salvage obtained on any sale or other disposition of such goods. In those circumstances where the Insured and the Company mutually determine that goods can not be salvaged, the Company shall not take an estimated salvage value deduction. In those circumstances where the Company determines that the goods are salvageable (or have salvage value) and the Insured is not in mutual agreement or does not want the goods sold for salvage, then the Insured shall retain possession of the goods and the Company shall be allowed to take an estimated salvage value deduction.

The cost of removal of brands and trademarks shall be considered as part of the damage.

28. **MACHINERY**

In case of loss or damage by a peril insured against to any part of a machine or unit consisting of two or more parts when complete for use, the liability of the Insurer shall be limited to the value of the part or parts lost or damaged or, at the Insured's option, and with the Company's consent, to the cost and expense of replacing or duplicating the lost or damaged part or parts or of repairing the machine or unit.

29. **ERRORS OR OMISSIONS**

This insurance shall not be prejudiced by any unintentional or inadvertent error or omission resulting in incorrect description of the interest, risk or property, provided notice is given to the company as soon as practicable, upon discovery.

# BAYSHORE RECYCLING CORPORATION

30.    **CONFLICTING STATUTES**

If any terms of this Policy conflict with the laws or statutes of any jurisdictions in which this Policy applies, this Policy is amended to conform to such laws or statutes.

31.    **PROFESSIONAL FEES**

This Policy covers the actual cost incurred by the Insured, of reasonable fees payable to the Insured's accountants, auditors, or other professionals, excluding the cost of using the Insured's employees, for producing and certifying any particulars or details contained in the insured's books or documents, or such other proofs, information or evidence required by the Company resulting from insured loss payable under this Policy for which the Company has accepted liability.

Coverage will not include the fees and costs of attorneys, public adjusters, insurance agents or brokers and loss appraisers, all including any of their subsidiary, related or associated entities either partially or wholly owned by them or retained by them for the purpose of assisting them nor the fees and costs of loss consultants who provide consultation on coverage or negotiate claims.

32.    **NOTICE OF LOSS**

As soon as practicable after any loss or damage occurring under this policy is known to the Insured's Home Office Insurance Department, the Insured shall report such loss or damage with full particulars to  M**arsh & McLennan Agency, Inc.** for transmission to the Company.

The Insured shall protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, value and amount of loss claimed.

33.    **PROOF OF LOSS**

It shall be necessary for the Insured to render a signed and sworn proof of loss to the Company or its appointed representative, within 60 days after the loss stating:

1.      The time and origin of the loss;

2.      The interest of the Insured and of all others in the property;

3.      The value of each item thereof and the amount of loss thereto;

4.      All encumbrances thereon;

5.      All other contracts of insurance whether valid or not, covering any of said property;

6.      Any changes in the title, use, occupation, location, possession or exposures of said property since the issuing of this Policy;

# BAYSHORE RECYCLING CORPORATION

7.   By whom and for what purposes any building herein described and the several parts thereof were occupied at the time of loss and whether or not it then stood on leased ground and shall furnish a copy of all the descriptions and schedules in all policies, and the actual amount of Business Interruption value and loss claimed, accompanied by detailed exhibits of all values, costs, and estimates upon which such amounts are based.

The Insured shall furnish a copy of all the descriptions and schedules in all policies and if required, verified plans and specifications of any building, fixtures or machinery destroyed or damaged. The Insured, as often as may be reasonably required, shall exhibit to any person designated by this Company all that remains of any property herein described, and shall submit and insofar as is within its power, cause its employees and others to submit to examinations under oath by any person named by this Company and subscribed to the same; and, as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this Company or its representative, and shall permit extracts and copies thereof to be made.

## 34.   INSPECTION OF PROPERTY AND OPERATIONS

The Company shall be permitted but not obligated to inspect the Insured's property and operations at any reasonable time. Neither the right to make inspections nor the making thereof nor any risk analysis for any particular hazards or perils nor any advice or report resulting therefrom shall imply any liability, nor constitute an undertaking on behalf of or for the benefit of the Insured or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation.

## 35.   SUSPENSION

Upon the discovery of a dangerous condition with respect to any Object, any representative of the Company may immediately suspend the insurance with respect to an Accident to said Object by written notice mailed or delivered to the Insured at the address of the Insured, or at the Location of the Object. Insurance so suspended may be reinstated by the Company, but only by an Endorsement issued to form a part of this policy. The Insured will be allowed the unearned portion of the premium paid for the suspended insurance, pro rata, for the period of suspension.

When used in this Policy, the following definitions shall apply:

**"Boiler and Machinery"** shall mean **Accident** to an **Object**

**"Object"** shall mean any boiler, fired or unfired pressure vessel, refrigerating or air conditioning system, piping and its accessory equipment, and any mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power.

# BAYSHORE RECYCLING CORPORATION

**"Accident"** shall mean a sudden and accidental breakdown of an Object or a part thereof which manifests itself at the time of its occurrence by physical damage that necessitates repair or replacement of the Object or part thereof.

**"Ammonia Contamination Coverage"** shall mean damage by ammonia contacting or permeating property under refrigeration or in process requiring refrigeration, resulting from any One Accident to one or more Objects.

**"Hazardous Substances Coverage"** shall mean that, if, as a result of an Accident to an Object, property is damaged, contaminated, or polluted by a substance declared by a governmental agency to be hazardous to health, the Company shall be liable under the policy for the additional expenses incurred for cleanup, repair or replacement, or disposal of that damaged, contaminated or polluted property.

As used here, "additional expenses" shall mean expenses incurred beyond those for which the Company would have been liable if no substance hazardous to health had been involved in the Accident.

**"Water Damage Coverage"**    shall mean damage by water, resulting from any One Accident to one or more objects.

36.    **APPRAISAL**

If the Insured and this Company fail to agree on the amount of loss, each upon the written demand either of the Insured or of the Company made within 60 days after receipt of proof of loss by the Company, shall select a competent and disinterested appraiser. The appraisers shall then select a competent and disinterested umpire. If they should fail for 30 days to agree upon such umpire, then upon the request of the Insured or of the Company, such umpire shall be selected by a judge of a court of record in the appropriate jurisdiction in which such appraisal is pending. Then, at a reasonable time and place, the appraisers shall appraise the loss, stating separately the value and the amount of loss. If the appraisers fail to agree, they shall submit their differences to the umpire. An award in writing by any two shall determine the amount of loss. The Insured and the Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and of the umpire.

37.    **CONSEQUENTIAL LOSS**

This policy insures against:

A.    consequential loss to the property insured caused by change of temperature or humidity or by interruption of power, heat, air conditioning, or refrigeration resulting from a peril insured against.

B.    the reduction in value to the remaining part or parts of any lot of merchandise usually sold by lots or sizes, color ranges, or other classifications due to damage to or destruction of a part of such lots or other classifications due to a peril insured against.

# BAYSHORE RECYCLING CORPORATION

38.    **PAIR AND SET**

Except as provided under Clause 28., Machinery, and under Item B of Clause 37. Consequential Loss, in the event of loss or damage by a peril insured against to:

A.    any article or articles which are a part of a pair or set, the measure of loss or damage to such article or articles shall be a reasonable and fair proportion of the total value of the pair or set, giving consideration to the importance of said article or articles, but in no event shall such loss or damage be construed to mean total loss of the pair or set; or

B.    any part of property covered consisting, when completed for use, of several parts, the Company shall be liable for the value of the part lost or damaged.

39.    **ASSISTANCE AND COOPERATION OF THE INSURED**

Following a loss:

The Insured shall use due diligence and do and concur in doing all things reasonably practicable to avoid or diminish any loss of or damage to the property herein insured.

The Insured shall cooperate with this Company and, upon this Company's request and expense, shall attend hearings and trials and shall assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses, and in conducting suits.

40.    **SUE AND LABOR**

In case of loss, it shall be lawful and necessary for the Insured, his or their factors, servants and assigns, to sue, labor, and travel for, in and about the defense, safeguard and recovery of the property insured hereunder, or any part thereof, without prejudice to this insurance, nor shall the acts of the Insured or the Insurer(s), in recovering, saving and preserving the property insured, in case of loss be considered a waiver or an acceptance of abandonment.  The expenses so incurred shall be borne by the Insured and the Company(ies) proportionately to the extent of their respective interests.    The Company(ies) portion of such expenses shall be limited to the extent that such expenses reduce loss which would otherwise be payable under this Policy.  This provision does not increase any amounts or limits of insurance provided by this Policy and deductible provisions shall apply to any expenses so incurred.

41 .    **PAYMENT OF LOSS**

All adjusted claims shall be due and payable no later than 30 days after presentation and acceptance of proofs of loss by this Company or its appointed representative.

# BAYSHORE RECYCLING CORPORATION

42.   **REINSTATEMENT**

Any loss hereunder shall not reduce the amount of this policy, except where annual aggregates apply.

43.   **LEGAL ACTION AGAINST THE COMPANY**

No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this policy. The Company agrees that any action or proceeding against it for recovery of any loss under this policy shall not be barred if commenced within the time prescribed therefore in the statutes of the state of <u>New York.</u>

44.   **CANCELLATION**

A.   This policy may be canceled at any time at the request of the First Named Insured, or it may be canceled by the Company by mailing to the First Named Insured at the mailing address shown on this policy written notice stating when, not less than ninety (90) days thereafter, such cancellation shall be effective.

B.   The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the First Named Insured or by the Company shall be equivalent to mailing.

C.   Cancellation shall not affect coverage on any shipment in transit on the date of cancellation. Coverage will continue in full force until such property is safely delivered and accepted at place of final destination.

D.   If coverage is canceled by the First Named Insured, the returned unearned premium shall be computed on a short rate basis and on a pro-rata basis if the Company cancels this Policy.

E.   A ten (10) day Notice of Cancellation for non-payment of premium shall apply under this policy.

45.   **CONFLICT OF WORDING**

The conditions contained in this form shall supersede those of the policy to which this form is attached, wherever the same may conflict.

# BAYSHORE RECYCLING CORPORATION

46. **CERTIFICATES OF INSURANCE**

The Company will authorize M**arsh & McLennan Agency, LLC.** to issue Certificates of Insurance for the policy issued by the Company solely as a matter of convenience or information for the addressee (s) or holder(s) of said Certificate of Insurance. Any policy issued by this Company may only be amended by an endorsement issued by the Company.

47. **TITLES OF PARAGRAPHS**

The titles of the paragraphs of this form and of endorsements and supplemental contracts, if any, now and hereafter attached hereto are inserted solely for convenience of reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

48. **ABANDONMENT**

There may be no abandonment of any property to the Company.

49. **VACANCY**

The Insured has permission to cease operations or remain vacant or unoccupied provided fire protection, watch and alarm services are maintained, and written notice is given to the "company" prior to the sixtieth (60th) consecutive day of cessation of operations, vacancy or unoccupancy. The Insured's building is considered vacant or unoccupied when it does not contain enough covered Property to conduct customary business operations, but it shall not include any time when customary activities are suspended due to circumstances that are usual to the described occupancy.

In the event the Insured fails to comply with the foregoing, all coverage otherwise provided under this policy is null and void at such locations.

50. **REPORT OF VALUES**:

The Insured shall provide the Company at Policy inception and each subsequent anniversary date of this Policy, a Statement of Values which consists of the current 100% Property and Time Element values for all Insured Locations.

51. **PREMIUM ADJUSTMENT**

Any mid-term increase/decrease in values due to newly acquired/divested properties will be subject to premium adjustment.

# BAYSHORE RECYCLING CORPORATION

## APPENDIX A – NEW MADRID SEISMIC ZONE

**Arkansas, counties of:**
Arkansas, Ashley, Chicot, Clay, Craighead, Crittenden, Cross, Desha, Drew, Fulton, Grant, Greene, Independence, Izard, Jackson, Jefferson, Lawrence, Lee, Lincoln, Lonoke, Mississippi, Monroe, Phillips, Poinsett, Prairie, Pulaski, Randolph, Saline, Sharp, St. Francis, White, Woodruff

**Illinois, counties of:**
Alexander, Bond, Calhoun, Christian, Clark, Clay, Clinton, Coles, Crawford, Cumberland, Edwards, Effingham, Fayette, Franklin, Gallatin, Greene, Hamilton, Hardin, Jackson, Jasper, Jefferson, Jersey, Johnson, Lawrence, Macoupin, Madison, Marion, Massac, Monroe, Montgomery, Morgan, Perry, Pike, Pope, Pulaski, Randolph, Richland, Saline, Sangamon, Scott, Shelby, St. Clair, Union, Wabash, Washington, Wayne, White, Williamson

**Indiana, counties of:**
Crawford, Daviess, Dubois, Gibson, Greene, Knox, Lawrence, Martin, Orange, Perry, Pike, Posey, Spencer, Sullivan, Vanderburgh, Warrick

**Kentucky, counties of:**
Ballard, Breckinridge, Butler, Caldwell, Calloway, Carlisle, Christian, Crittenden, Daviess, Fulton, Graves, Hancock, Henderson, Hickman, Hopkins, Livingston, Logan, Lyon, Marshall, McCracken, McLean, Muhlenberg, Ohio, Simpson, Todd, Trigg, Union, Warren, Webster

**Mississippi, counties of:**
Alcorn, Benton, Bolivar, Calhoun, Carroll, Chickasaw, Choctaw, Clay, Coahoma, De Soto, Grenada, Holmes, Humphreys, Issaquena, Itawamba, Lafayette, Lee, Leflore, Lowndes, Marshall, Monroe, Montgomery, Oktibbeha, Panola, Pontotoc, Prentiss, Quitman, Sharkey, Sunflower, Tallahatchie, Tate, Tippah, Tishomingo, Tunica, Union, Warren, Washington, Webster, Yalobusha, Yazoo

**Missouri, counties of:**
Audrain, Bollinger, Butler, Callaway, Cape Girardeau, Carter, Cole, Crawford, Dent, Dunklin, Franklin, Gasconade, Howell, Iron, Jefferson, Lincoln, Madison, Maries, Marion, Miller, Mississippi, Montgomery, New Madrid, Oregon, Osage, Pemiscot, Perry, Phelps, Pike, Pulaski, Ralls, Reynolds, Ripley, Scott, Shannon, St. Charles, St. Francois, St. Louis, St. Louis City, Ste. Genevieve, Stoddard, Texas, Warren, Washington, Wayne

**Tennessee, counties of:**
Benton, Carroll, Cheatham, Chester, Crockett, Decatur, Dickson, Dyer, Fayette, Gibson, Hardeman, Hardin, Haywood, Henderson, Henry, Hickman, Houston, Humphreys, Lake, Lauderdale, Lawrence, Lewis, Madison, McNairy, Montgomery, Obion, Perry, Robertson, Shelby, Stewart, Tipton, Wayne, Weakley

# BAYSHORE RECYCLING CORPORATION

### APPENDIX B – PACIFIC NORTHWEST SEISMIC ZONES

**<u>Oregon, counties of:</u>**
Benton, Clackamas, Clatsop, Columbia, Coos, Curry, Douglas, Jackson, Josephine, Klamath, lake, Lane, Lincoln, Linn, Marion, Multnomah, Polk, Tillamook, Washington, Yamhill

**<u>Washington, counties of:</u>**
Chelan, Clallam, Clark, Cowlitz, Grays Harbor, Island, Jefferson, King, Kitsap, Kittitas, Lewis, Mason, Pacific, Pierce, San Juan, Skagit, Snohomish, Thurston, Wahkiakum, Whatcom

**<u>British Columbia (includes Vancouver Island):</u>**
South of $50^{o}$ N latitude and west of $120^{o}$ W longitude

# BAYSHORE RECYCLING CORPORATION

### APPENDIX C -  DEFINITION OF TIER 1 WIND COUNTIES

**Alabama Counties of :**

Baldwin

Mobile

**FLORIDA :**

Entire State

**Georgia – Counties of :**

| | |
|---|---|
| Bryan | Glynn |
| Camden | Liberty |
| Chatham | McIntosh |

**Hawaii :**

Entire State

**Louisiana Parishes :**

| | |
|---|---|
| Assumption | St. Charles |
| Cameron | St. James |
| Iberia | St. John Baptist |
| Jefferson | St. Mary |
| LaFourche | St. Tammany |
| Orleans | Terrebonne |
| Plaquemines | Vermilion |
| St. Bernard | |

**Mississippi – Counties of :**

Hancock

Harrison

Jackson

**North Carolina – Counties of :**

| | |
|---|---|
| Beaufort | Jones |
| Bertie | New Hanover |
| Brunswick | Onslow |
| Camden | Pamlico |
| Carteret | Pasquotank |
| Chowan | Pender |
| Craven | Perquimans |
| Currituck | Tyrrell |
| Dare | Washington |
| Gates | |
| Hyde | |

# BAYSHORE RECYCLING CORPORATION

**South Carolina – Counties of :**

| | |
|---|---|
| Beaufort | Georgetown |
| Berkeley | Horry |
| Charleston | Jasper |

**Texas – Counties of :**

| | |
|---|---|
| Aransas | Kleberg |
| Brazoria | Matagorda |
| Calhoun | Nueces |
| Cameron | Orange |
| Chambers | Refugio |
| Galveston | San Patricio |
| Jefferson | Willacy |
| Kenedy | |

**Virginia Counties ;      Independent Cities :**

| | |
|---|---|
| Accomack | Chesapeake |
| Gloucester | Hampton |
| Isle of Wright | Newport News |
| James City | Norfolk |
| Lancaster | Poquoson |
| Mathews | Portsmouth |
| Middlesex | Virginia beach |
| Northampton | Williamsburg |
| Northumberland | |
| Surry | |
| York | |

**Puerto Rico :**

Entire Island

| Named Insured: **Bayshore Recycling Corporation** | | | Endorsement Number **1** |
|---|---|---|---|
| Policy Symbol **EPR** | Policy Number **N0915842A** | Policy Period **February 16, 2014 to February 16, 2015** | Effective Date of Endorsement **February 16, 2014** |
| Issued By (Name of Insurance Company) **ACE American Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ADDITIONAL INSUREDS AND LOSS PAYEES ENDORSEMENT**

Additional Insureds and Loss Payees do not have the same rights and obligations under this policy as a Named Insured, or first Named Insured, and this provision does not confer any such rights or obligations on Additional Insureds or Loss Payees. The term Additional Insureds and Loss Payees means persons or entities, other than the First Named Insured or any other Named Insured, to whom money or insurance proceeds is to be paid for a covered loss under this Policy. An Additional Insured and Loss Payee is not a First Named or a Named Insured.

This provision does not apply to contractual requirements to add persons or entities as Named Insureds or additional Named Insureds. Such Named Insureds or additional Named Insureds can only be added to this policy by separate written endorsement.

1.  If, pursuant to a written contract effective prior to the date of the loss in question, the Named Insured shown in the Declarations ("first Named Insured") is required to add a person or entity to this policy that was not already added:

    a.  as an Additional Insured, then this policy shall be deemed to have been endorsed accordingly, subject to all other terms, conditions, limits of liability and exclusions of this policy, as such person or entity's interest may appear;

    b.  as a Loss Payee, then this policy shall be deemed to have been endorsed accordingly, subject to all other terms, conditions, limits of liability and exclusions of this policy, and loss to covered property in which such Loss Payee has an interest shall be adjusted with the Insured and payable jointly to the first Named Insured and such Loss Payee;

    and no written endorsement to this policy shall be required in order for this provision to be effective as to such person or entity subject to compliance with the following.

2.  Pursuant to item 1. above and within ninety (90) business days after we are notified of a loss which may be covered under this policy, the first Named Insured or its authorized representative shall:

    a.  provide the Company with the identities of all persons or entities with interests in the property that is the subject of the loss; and

    b.  provide the Company with copies of all contracts (predating the date of loss) requiring that such persons or entities be added to this policy as Additional Insureds or Loss Payees.

Page 1 of 2

| Named Insured: | | | Endorsement Number |
|---|---|---|---|
| **Bayshore Recycling Corporation** | | | **1** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **EPR** | **N0915842A** | **February 16, 2014 to February 16, 2015** | **February 16, 2014** |
| Issued By (Name of Insurance Company) | | | |
| **ACE American Insurance Company** | | | |

       c.       if the First Named Insured reasonably requires more than ninety (90)     business days to produce the information required under paragraphs 2a    and 2b above, the Company will provide extensions of time that are reasonable and appropriate for the circumstances, however all such requests must be made in writing to the Company.

3.       If the first Named Insured or its authorized representative fails to comply with item 2. above, the Company shall assume that there are no such persons or entities, and:

       a.       the Company shall not be liable for any failure to take such person or entity's interest into account in the adjustment or payment of any loss; and

       b.       The Company can only accept copies of those contracts which require the addition of a person or entity as an Additional Insured or Loss Payee that are directly related to the property which is the subject of the loss.  Providing the Company with copies of any and all contracts requiring addition of a person or entity as an Additional Insured or Loss Payee, or with bordereaux listings of all such persons and entities, at any time before, on, or after the date of a loss shall not constitute compliance with item 2. above.

4.       This Additional Insureds and Loss Payees provision does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit the Company from providing insurance to such persons or entities, including, but not limited to, the payment of claims.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

| Named Insured: | | | Endorsement Number |
|---|---|---|---|
| **Bayshore Recycling Corporation** | | | **2** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **EPR** | **N0915842A** | **February 16, 2014 to February 16, 2015** | **February 16, 2014** |
| Issued By (Name of Insurance Company) | | | |
| **ACE American Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**BIOLOGICAL OR NUCLEAR MATERIALS EXCLUSION**

This policy does not insure against any loss, damage, cost or expense caused by or resulting from any of the following, regardless of any other cause or event contributing concurrently or in any sequence thereto:

1. The unlawful possession, use, release, discharge, dispersal or disposal of any bacteriological, viral, radioactive or similar agents or matter regardless of who is responsible for the act and whether war has been declared or not, and regardless of any other cause or event contributing concurrently or in any other sequence thereto.

2. The unlawful possession, use, release, discharge, detonation, dispersal or disposal of any device or material capable of producing a nuclear reaction or the spread of radioactivity, regardless of who is responsible for the act and whether war has been declared or not, and regardless of any other cause or event contributing concurrently or in any other sequence thereto.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

Page 1 of 1

| Named Insured: | | | Endorsement Number |
|---|---|---|---|
| **Bayshore Recycling Corporation** | | | **3** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **EPR** | **N0915842A** | **February 16, 2014 to February 16, 2015** | **February 16, 2014** |
| Issued By (Name of Insurance Company) | | | |
| **ACE American Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## BRIDGE WORDING ENDORSEMENT

Whenever used in this Policy, the terms, "we", "our", "you", and "your" are hereby changed to "the Company", "the Company's", "the Insured", and "the Insureds".

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

| Named Insured: | | | Endorsement Number |
|---|---|---|---|
| **Bayshore Recycling Corporation** | | | **4** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **EPR** | **N0915842A** | **February 16, 2014 to February 16, 2015** | **February 16, 2014** |
| Issued By (Name of Insurance Company) | | | |
| **ACE American Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**COINSURANCE ENDORSEMENT**

Applicable to <u>Business Interruption – Gross Earnings</u>:

This Company shall be liable, in the event of loss, for no greater proportion thereof than the amount hereby covered bears to eighty percent (80%) of the Gross Earnings that would have been earned had no loss occurred during the twelve (12) months immediately following the date of damage to or destruction of the described property.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

| Named Insured: | | | Endorsement Number |
|---|---|---|---|
| **Bayshore Recycling Corporation** | | | **5** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **EPR** | **N0915842A** | **February 16, 2014 to February 16, 2015** | **February 16, 2014** |
| Issued By (Name of Insurance Company) | | | |
| **ACE American Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**DATA DISTORTION/CORRUPTION ENDORSEMENT**

It is noted and agreed this policy is hereby amended as follows:

The Insurer will not pay for Damage or Consequential loss directly or indirectly caused by, consisting of, or arising from:

(A)    Any functioning or malfunctioning of the Internet or similar facility, or of any intranet or private network or similar facility,

(B)    Any corruption, destruction, distortion, erasure or other loss or damage to data, software or any kind of programming or instruction set,

(C)    Loss of use or functionality whether partial or entire of data, coding, program, software, any computer or computer system or other device dependent upon any microchip or embedded logic, and any ensuing inability or failure of the Insured to conduct business.

This endorsement shall not exclude subsequent Damage or Consequential loss, not otherwise excluded, which itself results from a Defined Peril not otherwise excluded. Defined Peril shall mean: Fire, Lightning, Explosion, Falling Aircraft, Smoke, Vehicle Impact, Windstorm or Tempest, Hail, Accidental Breakdown of an Object including Mechanical and Electrical Breakdown.

This Endorsement shall not act to increase or broaden coverage afforded by this policy.

Such Damage or Consequential Loss described in A, B, or C above, is excluded regardless of any other cause that contributed concurrently or in any other sequence.

In consequence of all the foregoing the Annual Premium remains unaltered.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

| Named Insured: | | | Endorsement Number |
|---|---|---|---|
| **Bayshore Recycling Corporation** | | | **6** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **EPR** | **N0915842A** | **February 16, 2014 to February 16, 2014** | **February 16, 2014** |
| Issued By (Name of Insurance Company) | | | |
| **ACE American Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**LENDER'S LOSS PAYABLE ENDORSEMENT**

Loss, if any, under this policy shall be payable to Sun National Bank whose address is P.O. Box 885 Vineland, NJ 08362 as lender, mortgagee, or trustee, as interest may appear.

It is understood that the lender, mortgagee or trustee now has or will acquire from time to time an insurable interest in certain property insured under this policy as established by warehouse receipts, bills of lading, documentary or other written evidence.

This insurance, solely as to the interest therein of the lender, mortgagee or trustee, shall not be impaired or invalidated by any act or neglect of the borrower, mortgagor or owner of the within described property except as provided in the last paragraph hereof, nor by any change in the title or ownership of the property, nor by the occupation of the premises wherein such property is located for purposes more hazardous than are permitted by this policy; provided that in case the borrower, mortgagor or owner shall neglect to pay any premium due under this policy the lender, mortgagee or trustee shall, on demand, pay the same.

Provided, also, that the lender, mortgagee or trustee shall notify this Company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said lender, mortgagee or trustee, and unless permitted by this policy, it shall be noted thereon and the lender, mortgagee or trustee shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void.

This company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the lender, mortgagee or trustee for ten days after notice to the lender, mortgagee or trustee of such cancellation and shall then cease, and this Company shall have the right, on like notice, to cancel this agreement.

Whenever this Company shall pay the lender, mortgagee or trustee any sum for loss or damage under this policy and shall claim that, as to the borrower, mortgagor or owner, no liability therefor existed, this Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the debt, or may, at its option, pay the lender, mortgagee or trustee, the whole principal due or to grow due on the debt with interest, and shall thereupon receive a full assignment and transfer of the debt and of the mortgage and the right of the lender, mortgagee or trustee to recover the full amount of its claim against the borrower, mortgagor or owner.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

| Named Insured: | | | Endorsement Number |
|---|---|---|---|
| **Bayshore Recycling Corporation** | | | **7** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **EPR** | **N0915842A** | **February 16, 2014 to February 16, 2015** | **February 16, 2014** |
| Issued By (Name of Insurance Company) | | | |
| **ACE American Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**LOSS PAYEE ENDORSEMENT**

It is hereby understood and agreed that the following Loss Payees are added:

<u>As respects leased equipment</u>:

Bank of the West ISAOA
c/o Insurance Service Center
P.O. Box 979056
Miami, FL  33197-9056

<u>As respects BHS Handling System 1734 and all components</u>:

Wells Fargo Equipment Finance Inc.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

Page 1 of 1

| Named Insured: | | | Endorsement Number |
|---|---|---|---|
| **Bayshore Recycling Corporation** | | | **8** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **EPR** | **N0915842A** | **February 16, 2014 to February 16, 2015** | **February 16, 2014** |
| Issued By (Name of Insurance Company) | | | |
| **ACE American Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## MOBILE EQUIPMENT ENDORSEMENT

The coverage provided by this Policy to which this Endorsement is attached is restricted as respects direct physical loss or damage to Mobile Equipment of the Insured, or Mobile Equipment of others in the care, custody and control of the Insured and for which the Insured is legally liable, all while situated at an Insured Location and described in the MOBILE EQUIPMENT SCHEDULE set forth herein.

Boom(s) in excess of <u>Twenty-Five</u> (25) feet in length are insured hereunder only against loss or damage directly caused by fire, lightning, wind, explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles, smoke, landslide or overturning of the unit of which it is a part; collision, derailment or overturn of carrying conveyance on which the unit insured hereunder is being transported; collision with other Mobile Equipment, whether or not such other equipment is insured hereunder.

**A.    LIMIT OF LIABILITY:**

This Company's total liability in any one occurrence under this Endorsement shall in no event exceed <u>the Scheduled value of each item set forth below, subject to</u> **$The Sublimit of Liability specified in Clause 3. Limit of Liability** for all items combined, either in case of partial or total loss, or salvage charges, or expenses, or all combined. Any subsequent increase in the Schedule of Values and/or Mobile Equipment Schedule shall not be deemed to increase the liability limit stated in this clause unless amended specifically by Endorsement.

**B.    MOBILE EQUIPMENT SCHEDULE**

| ITEM # | MANUFACTURER | SERIAL # | Limit of Liability | Loss Payee |
|---|---|---|---|---|
| 1 | 2002 Excavator/Hammer (BS), Caterpillar 322C | XBKJ00247X | $    50,000 | |
| 2 | 2003 Excavator (BS), Caterpillar 365B | DER00119 | $   175,000 | |
| 3 | 2006 Small Grapple (BS), Caterpillar 308CCR | KCK652 | $    40,000 | |
| 9 | Generator (BS), Caterpillar 3412SR4 | 5NA10080 | $    50,000 | |
| 10 | 2000 Excavator (BS), Caterpillar 322B | YS01193 | $    20,000 | Wells Fargo* |
| 12 | Excavator w/Gelth Bucket (BS), Komatsy PC400LC6 | A80073/257 2 | $    40,000 | |
| 13 | Shear (BS), LaBounty MSD7OR-111 | 70853 | $    25,000 | |
| 14 | Wheel Loader (BS), Caterpillar 980 G II | AWH01696 | $    80,000 | |
| 15 | Hydraullc Excavator (BS), Caterpillar 320C | PAB0063 | $    50,000 | |
| 16 | Bulldozer (BS), Caterpillar D3g | KFC00672 | $    25,000 | |
| 17 | Telehandler (BS), Caterpillar TH560B | SLG00444 | $    25,000 | |
| 18 | Excavator (BS), Caterpillar 375MH | 1JM00610 | $   175,000 | |
| 19 | 2004 Front End Loader #3(BS), Caterpillar 980G II | AWH02069 | $    85,000 | |
| 20 | Backhoe/Loader#3(BS), Caterpillar 420D | FDP23596 | $    40,000 | |

| Named Insured: | | | Endorsement Number |
|---|---|---|---|
| **Bayshore Recycling Corporation** | | | **8** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **EPR** | **N0915842A** | **February 16, 2014 to February 16, 2015** | **February 16, 2014** |
| Issued By (Name of Insurance Company) | | | |
| **ACE American Insurance Company** | | | |

| | | | | |
|---|---|---|---|---|
| 21 | 1995 Excavator (BS), Caterpillar 325 | 7LM01125 | $ 20,000 | |
| 22 | Track Type Tractor, Caterpillar D4HXL | 8PJ01152 | $ 15,000 | |
| 24 | 1995 Loader (BS), Caterpillar 950F | 05SK01644 | $ 25,000 | |
| 25 | Rubber Tire Loader (BS), Caterpillar 928 | 6XR00766 | $ 35,000 | |
| 26 | 2002 Skid Mount Crusher (BS), Eagle | 22345 | $ 30,000 | |
| 41 | Drum Roller (BS), Bomag BW172D | 101520110714 | $ 10,000 | |
| 44 | Misc Tools (BS) | | $ 100,000 | |
| 52 | Grapple (attachment for 345MH) (BS), Caterpillar L200 | 07A0529 | $ 25,000 | |
| 57 | Ohio 58" dla loadstar magnet (Coastal Metal) | | $ 12,000 | |
| 72 | 1997 Excavator (BSM), Caterpillar 315 | 6YM02248 | $ 15,000 | |
| 73 | 2007 Caterpillar 330DL excavator w/Gelth Grapple Attachment DG140 | MWP2061 | $ 155,000 | |
| 74 | 2006 Link Belt Excavator, 330 | 6J61162 | $ 135,000 | |
| 75 | Genie Model S-45 Base Machine | 5474 | $ 18,000 | |
| 90 | Komatsu PC400LC-7L Hydraulic Excavator w/ attachments (BAYS) | AB6195 | $ 185,000 | Wells Fargo* |
| 94 | 2007 Extec S-5 Screener (BAYS) | 11046 | $ 180,000 | |
| 95 | 2007 Extec E7 Screener (BAYS) | 10470 | $ 150,000 | |
| 96 | 2006 Extec E7 Screener (BAYS) | 9807 | $ 130,000 | |
| 97 | Caterpillar D6R Dozer (BAYS) | 5LN00676 | $ 55,000 | Wells Fargo* |
| 98 | CAT D400 Articulated Trucks (BAYS) | 2YR00954 | $ 40,000 | |
| 99 | CAT D400 Articulated Trucks (BAYS) | 2YR00955 | $ 40,000 | |
| 101 | Environmental Analy zer, XL3T 600 | | $ 40,000 | |
| 102 | CAT980H Loader, Loader | JMS02350 | $ 180,000 | |
| 103 | CAT 320CL Excavator | EAG00151 | $ 65,000 | |
| 104 | 2001 Ultramax Crusher - Eagle | 22212 | $ 100,000 | |
| 105 | 2001 Ultramax crusher-Eagle | 22182 | $ 100,000 | |
| 106 | Impact Crusher - Extec | 7661 | $ 80,000 | |
| 107 | Trommel Screen with sg51232-0103 | 7491 | $ 20,000 | |
| 108 | Truck Scales Weight, Tronix | TSS0004665 | $ 100,000 | |
| 116 | 2003 Cat 950H, CAT950 | K5K01976 | $ 140,000 | |
| 119 | Stationary Compactor | | $ 20,725 | |
| 120 | Caterpillar 924 Wheel Loader | HXC417 | $ 106,000 | Wells Fargo** |
| 63 | Linkbelt 350X2EX with Screening Attachments | EKCJ9-3840 | $ 196,000 | Wells Fargo* |
| 68 | Sandvik Model QH440 Track Screener | 1886SW1061 1 | $ 290,500 | Wells Fargo** |
| 69 | 2007 UNMT Allianz S weeper | 1J9VM3H677 C172155 | $ 73,000 | |
| 70 | American Model NF45 60 Closed end Manual Tie Bender | 9348 | $ 155,500 | Wells Fargo** |

| Named Insured: | | | Endorsement Number |
|---|---|---|---|
| **Bayshore Recycling Corporation** | | | **8** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **EPR** | **N0915842A** | **February 16, 2014 to February 16, 2015** | **February 16, 2014** |
| Issued By (Name of Insurance Company) | | | |
| **ACE American Insurance Company** | | | |

| 71 | Linkbelt 350X2 Hydraulic Excavator | EKCK14572 | $ | 201,500 | Wells Fargo** |
|---|---|---|---|---|---|
| 72 | CAT 980 Wheel Loader | W7K00564 | $ | 385,000 | Caterpillar Financial Services Corporation 2120 West End Ave. Nashville, TN 37203 |
| 121 | Linkbelt TL65 Wheel Loader | TL00650160 | $ | 16,212 | Wells Fargo** |
| 122 | CEMSentry 2000 Continuos Emmission | 1265-08/21609 | $ | 28,988 | Wells Fargo** |
| 123 | 2013 Case SV212-SM | NCNTC3298 | $ | 120,000 | Hoffman Equipment 300 S. Randolphville Rd Piscataway, NJ 08854 |
| 76 | Wacker Model WL30 Wheel Loader (BRC) WL30 | 3016067 | $ | 46,850 | Wells Fargo** |
| 77 | Caterpillar Model 963C Loader (MDS) | BBD02987 | $ | 121,400 | Wells Fargo** |
| 78 | Linkbelt Model 145X 3LC Hydraulic Crawler Excavator (MDS) 145X3LC | EBBK3-6686 | $ | 153,000 | Wells Fargo** |
| 79 | Caterpillar Model D6T GPVP Tractor (BSM) D65 LGPVP | WCG00354 | $ | 145,500 | Wells Fargo** |

C.    **ADDITIONAL EXCLUSIONS:**

In addition to the exclusions elsewhere in this Policy, the following exclusions apply to this Endorsement:

THIS ENDORSEMENT DOES NOT INSURE:

1.    Property while loaned, leased or rented to others;

2.    Plans, blueprints, designs, specifications or any similar property;

3.    Automobiles, motor trucks, tractors, trailers, motorcycles, or similar conveyances licensed for use on public highways;

4.    Aircraft or watercraft;

5.    Property while underground, underwater, waterborne (except while being transported on a regular ferry line), or airborne;

6.    Property which has become a part of any structure;

7.    Against loss, damage or expense occasioned by the weight of a load exceeding the rated or registered lifting or supporting capacity of any machine;

8.    Against loss, damage or expense to dynamos, exciters, lamps, switches, motors or other electrical appliances or devices, including wiring, caused by electrical injury or disturbance from artificial causes unless fire or explosion ensues and then only for the actual loss or damage directly caused by such ensuing fire or explosion;

Page 3 of 5

| Named Insured: | | | Endorsement Number |
|---|---|---|---|
| **Bayshore Recycling Corporation** | | | **8** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **EPR** | **N0915842A** | **February 16, 2014 to February 16, 2015** | **February 16, 2014** |
| Issued By (Name of Insurance Company) | | | |
| **ACE American Insurance Company** | | | |

9.      Against loss, damage, or expense occasioned by any repairing, adjusting, servicing, remodeling or maintenance operation unless fire or explosion ensues and then only for the actual loss or damage directly caused by such ensuing fire or explosion;

10.     Against loss, damage or expense to tires or tubes unless the loss or damage is caused by fire, windstorm or theft or is coincident with other loss or damage insured by this Policy;

11.     Against loss, damage or expense occasioned by breaking through ice, or subsidence of ice or sinking in muskeg;

12.     Against loss, damage or expense occasioned by or resulting from misappropriation, secretion, conversion, infidelity or any dishonest act on the part of the Insured or any other party of interest, his or their employees or agents or any person or persons to whom the property may be entrusted, other than carriers for hire;

13.     Against unexplained loss, mysterious disappearance, nor loss or shortage disclosed upon taking inventory;

14.     Against loss, damage or expense occasioned by obsolescence;

15.     Against loss, damage or expense caused by or resulting from wear and tear, mechanical or electrical breakdown or failure, inherent vice, latent defect, gradual deterioration, corrosion, pitting, rust, dampness of atmosphere, freezing or extremes of temperature;

16.     Against loss, damage or expense occasioned by overheating or explosion originating within steam boilers, steam piping, pressure vessels or internal combustion engines;

17.     Against loss, damage or expense occasioned by rotating parts of machinery caused by centrifugal force;

18.     Against loss, damage or expense occasioned by any loss which is unexplained;

19.     Against loss resulting from interruption of business, delay, loss of market or use, or direct or consequential loss of any kind;

20.     The cost and expense of repairing any defective part.

21.     An Occurrence on public roads or waterways

**D.**    **VALUATION:**

This Company shall not be liable beyond the Actual Cash Value of the Mobile Equipment at the time any loss or damage occurs and the loss or damage shall be ascertained or estimated according to such actual cash value with proper deduction for depreciation, however caused, subject to a maximum of the scheduled value of the item, as scheduled herein, and shall in no event exceed what it would then cost to repair or replace the same with material of like kind and quality.

| Named Insured: | | | Endorsement Number |
|---|---|---|---|
| **Bayshore Recycling Corporation** | | | **8** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **EPR** | **N0915842A** | **February 16, 2014 to February 16, 2015** | **February 16, 2014** |
| Issued By (Name of Insurance Company) | | | |
| **ACE American Insurance Company** | | | |

**E.      TERRITORY:**

This Endorsement insures only while the Mobile Equipment is at locations within the United States of America including the District of Columbia.

**F.      NEW ACQUISITIONS:**

This Endorsement is extended to cover additional items of a nature similar to those scheduled herein and such items have been acquired subsequent to the attachment date and during the term of this Policy provided the Insured reports such additions within <u>Thirty</u> (30) days from the date acquired and pays full premium thereon from the date acquired at pro rata of the Policy rate.  It is specifically understood and agreed, however, that this Endorsement shall cease to cover such additional items if they are not reported to the Company within the said <u>Thirty</u> (30) day period and that in any event this Company shall not be liable under the provisions of this clause for more than the actual cash value of such property.

**G.      LOSS PAYEE:**

The following are added as Loss Payees with respect to Mobile Equipment as indicated above:

    \*        Wells Fargo Equipment Finance, Inc.
            733 Marquette Avenue, Suite 700
            MAC N9306-070
            Minneapolis, MN  55402

    \*\*        Wells Fargo Equipment Finance, Inc.
            1540 West Fountainhead Pkwy
            MAC S3966-100
            Tempe, AZ  85282

This Endorsement is subject to the Deductibles specified in the Declarations and does not increase any amounts or limits of insurance provided by this Policy.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

| Named Insured: | | | Endorsement Number |
|---|---|---|---|
| **Bayshore Recycling Corporation** | | | **9** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **EPR** | **N0915842A** | **February 16, 2014 to February 16, 2015** | **February 16, 2014** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE American Insurance Company** |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**MILLENNIUM ENDORSEMENT**
(Standard Property including B&M)

The policy is hereby amended as follows:

The Insurer will not pay for Damage or Consequential Loss directly or indirectly caused by, consisting of, or arising from, the failure of any computer, data processing equipment or media microchip, operating systems, microprocessors (computer chip), integrated circuit or similar device, or any computer software, whether the property of the insured or not, and whether occurring before, during or after the year 2000 that results from the inability to:

1.  correctly recognize any date as its true calendar date;

2.  capture, save, or retain and/or correctly manipulate, interpret or process any data or information or command or instruction as a result of treating any date other than as its true calendar date; and/or

3.  capture, save, retain or correctly process any data as a result of the operation of any command which has been programmed into any computer software, being a command which causes the loss of data or the inability to capture, save, retain or correctly process such data on or after any date.

A.  It is further understood that the Insurer will not pay for the repair or modification of any part of an electronic data processing system or its related equipment, to correct deficiencies or features of logic or operation.

B.  It is further understood that the Insurer will not pay for Damage or Consequential Loss arising from the failure, inadequacy, or malfunction of any advice, consultation, design, evaluation, inspection installation, maintenance, repair or supervision done by the Insured or for the Insured or by or for others to determine, rectify or test, any potential or actual failure, malfunction or inadequacy described in A. above.

Such damage or Consequential Loss described in A, B, or C above, is excluded regardless of any other cause that contributed concurrently or in any other sequence.

This endorsement shall not exclude subsequent Damage or Consequential Loss, not otherwise excluded, which itself results from a Defined Peril.  Defined Peril shall mean:  Fire, Lightning, Explosion, Falling Aircraft, Smoke, Vehicle Impact, Windstorm, Hail, Accidental Breakdown of an Object including Mechanical and Electrical Breakdown.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

| Named Insured: | | | Endorsement Number |
|---|---|---|---|
| **Bayshore Recycling Corporation** | | | **10** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **EPR** | **N0915842A** | **February 16, 2014 to February 16, 2015** | **February 16, 2014** |
| Issued By (Name of Insurance Company) | | | |
| **ACE American Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**MOLD EXCLUSION ENDORSEMENT**

This policy does not insure any loss, damage or expense consisting of, caused by, contributed to, or aggravated by mold, moss, mildew, fungi, spores, bacterial infestation or any similar organism, wet or dry rot and extremes of temperature or humidity, whether directly or indirectly the result of a covered peril. This includes, but is not limited to, the cost for investigation, testing, remediation services, extra expense or business interruption. Such loss is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

If loss otherwise covered by this policy occurs and the cost of removal of debris is increased due to the presence of rust, mold, moss, fungus, bacterial infestation, wet or dry rot and extremes of temperature or humidity, this policy will only be liable for the costs of debris removal which would have been incurred had no such factors been present in, on, or about the covered property to be removed.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

| Named Insured: | | | Endorsement Number |
|---|---|---|---|
| **Bayshore Recycling Corporation** | | | **11** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **EPR** | **N0915842A** | **February 16, 2014 to February 16, 2015** | **February 16, 2014** |
| Issued By (Name of Insurance Company) | | | |
| **ACE American Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NAMED WINDSTORM ENDORSEMENT**

**Named Windstorm** shall mean a storm or weather condition that:

1.    Has sustained wind speeds of at least 39 miles per hour and;

2.    Has been declared by the U.S. National Weather Service, the World Meteorological Organization or Regional Specialized Meteorological Center (RSMC) or Tropical Cyclone Warning Center (TCWC) having regional responsibility, or any governmental agency or body having the authority to make such declarations to be a hurricane, typhoon, tropical storm or cyclone.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

Page 1 of 1

| Named Insured: | | | Endorsement Number |
|---|---|---|---|
| **Bayshore Recycling Corporation** | | | **12** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **EPR** | **N0915842A** | **February 16, 2014 to February 16, 2015** | **February 16, 2014** |
| Issued By (Name of Insurance Company) | | | |
| **ACE American Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**POLICY AMENDMENT ENDORSEMENT**

It is hereby understood and agreed that:

1. Item **F.**, set forth under Clause **11. PROPERTY EXCLUDED**, is amended to read as follows:

    F. Docks, piers, wharves and property located offshore or beyond the shoreline, except Waterborne Equipment (equipment must be on reported schedule of values) and that structures (and their contents) extending from land or shore are not to be considered as offshore.

2. Item **N.**, set forth under Clause **10. PERILS EXCLUDED** is deleted.

ALL TERMS AND CONDITIONS REMAIN UNCHANGED.

| Named Insured: | | | Endorsement Number |
|---|---|---|---|
| **Bayshore Recycling Corporation** | | | **13** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **EPR** | **N0915842A** | **February 16, 2014 to February 16, 2015** | **February 16, 2014** |
| Issued By (Name of Insurance Company) | | | |
| **ACE American Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**TRADE OR ECONOMIC SANCTIONS ENDORSEMENT**

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims. All other terms and conditions of policy remain unchanged.

ALL TERMS AND CONDITIONS REMAIN UNCHANGED.

Page 1 of 1

| Named Insured: | | | Endorsement Number |
|---|---|---|---|
| **Bayshore Recycling Corporation** | | | **14** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **EPR** | **N0915842A** | **February 16, 2014 to February 16, 2015** | **February 16, 2014** |
| Issued By (Name of Insurance Company) | | | |
| **ACE American Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**TERRORISM RISK INSURANCE ACT, AS AMENDED**
**CAP ON LOSSES ENDORSEMENT**

With respect to any one or more "certified acts of terrorism" under the TERRORISM RISK INSURANCE ACT, as amended ("the Act"), the company shall not be liable under this policy for more than the amount that the company would be responsible under the terms of the Act (including subsequent action of Congress) due to the application of any clause which results in a cap of the Company's liability for payment of terrorism losses.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002, as amended. The federal Terrorism Risk Insurance Act of 2002, as amended, sets forth the following criteria for a "certified act of terrorism":

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABIITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION.  IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, COVERAGE MAY BE REDUCED.**

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

| Named Insured: | | | Endorsement Number |
| --- | --- | --- | --- |
| **Bayshore Recycling Corporation** | | | **15** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **EPR** | **N0915842A** | **February 16, 2014 to February 16, 2015** | **February 16, 2014** |
| Issued By (Name of Insurance Company) | | | |
| **ACE American Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### CONDITIONAL TERRORISM EXCLUSION (RELATING TO DISPOSITION OF THE TERRORISM RISK INSURANCE ACT)

**The provisions of this endorsement become applicable commencing on the date when any one or more of the following first occurs.  But if this Policy begins after such date, then the provisions of this endorsement become applicable on the date this Policy begins.**

1. **The federal Terrorism Risk Insurance Program ("the Program"), established by the Terrorism Insurance Act ("the Act"), has terminated with respect to the type of insurance provided under this Policy; or**

2. **A renewal, extension or replacement of the Program has become effective without a requirement to make terrorism coverage available to you; or**

3. **The Act has been replaced with a different law that redefines terrorism or makes insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this Policy.**

**If the provisions of this endorsement become applicable, such provisions:**

1. **Supersede any terrorism endorsement already endorsed to this Policy that addresses "certified acts of terrorism" and/or "acts of terrorism", but only with respect to loss or damage from an incident(s) of terrorism (however defined) that occurs on or after the date when the provisions of the endorsement become applicable; and**

2. **Remain applicable unless we notify you of changes in these provisions, in response to federal law.**

**If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this Policy that addresses "certified acts of terrorism" and/or "acts of terrorism" will continue in effect unless we notify you of changes to that endorsement in response to federal law.**

Notwithstanding any provision to the contrary within this Policy or any endorsement thereto, it is agreed that this Policy excludes loss, damage, cost, or expense of whatever nature including punitive damages and exemplary damages directly or indirectly caused by, resulting from, or in connection with any "act of terrorism" regardless of any other cause or event that directly or indirectly:

1.    contributes concurrently to; or
2.    contributes in any sequence to,

the loss or damage, even if such other cause or event would otherwise be covered.

| Named Insured: | | | Endorsement Number |
|---|---|---|---|
| **Bayshore Recycling Corporation** | | | **15** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **EPR** | **N0915842A** | **February 16, 2014 to February 16, 2015** | **February 16, 2014** |
| Issued By (Name of Insurance Company) | | | |
| **ACE American Insurance Company** | | | |

For the purpose of this endorsement, an "act of terrorism" means an act against persons, organizations or property of any nature:

A.      that involves the following or preparation for the following:

      1.      use or threat of force or violence

      2.      commission or threat of a dangerous act; or

      3.      commission or threat of an act that interferes with or disrupts an electronic, communication, information or mechanical system; and

B.      when one or more of the following applies:

      1.      the effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy;

      2.      The stated intent at the time of commission is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology; or

      3.      it appears from the standpoint of a reasonable person that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

This endorsement also excludes loss, damage, cost, or expense of whatsoever nature directly or indirectly caused by, resulting from, or in connection with any action taken in controlling, preventing, suppressing, or in any way relating to any act of terrorism, regardless of any other cause or event that directly or indirectly:

1.      contributes concurrently to; or
2.      contributes in any sequence to,

the loss or damage, even if such other cause or event would otherwise be covered.

| Named Insured: | | | Endorsement Number |
|---|---|---|---|
| **Bayshore Recycling Corporation** | | | **15** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **EPR** | **N0915842A** | **February 16, 2014 to February 16, 2015** | **February 16, 2014** |
| Issued By (Name of Insurance Company) | | | |
| **ACE American Insurance Company** | | | |

However, if an act of terrorism results in a fire and the direct physical loss or damage to property insured hereunder located in any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, the Commonwealth of the Northern Mariana Islands, American Samoa, Guam, each of the United States Virgin Islands and any territory or possession of the United States, that, either pursuant to the Standard Fire Policy or otherwise, prohibits exclusions for acts of terrorism that result in fire,  this Company will pay for the covered loss or damage caused by that fire.  Such coverage for fire applies only to direct physical loss or damage to property insured hereunder and may be limited, in accordance with the Standard Fire Policy to the lesser of the actual cash value of the property at the time of the loss, or the amount which it would cost to repair or replace the property, without allowance for any increased cost of repair or replacement by reason of any ordinance or law, and without any compensation for business interruption, extra expense to continue business activities, or any other coverage for loss or damage other than direct physical loss or damage to the property insured hereunder.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

| Named Insured: | | | Endorsement Number |
|---|---|---|---|
| **Bayshore Recycling Corporation** | | | **16** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **EPR** | **N0915842A** | **February 16, 2014 to February 16, 2015** | **February 16, 2014** |
| Issued By (Name of Insurance Company) | | | |
| **ACE American Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE PURSUANT TO TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION ACT OF 2007**

**Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Program Reauthorization Act of 2007 ("Reauthorization Act"), we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Reauthorization Act. The portion of your premium attributable to such coverage is shown in this endorsement or in the policy Declarations.

**Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Reauthorization Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Reauthorization Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Reauthorization Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

COVERAGE OF "ACTS OF TERRORISM" AS DEFINED BY THE REAUTHORIZATION ACT WILL BE PROVIDED FOR THE PERIOD FROM THE EFFECTIVE DATE OF YOUR NEW OR RENEWAL POLICY THROUGH THE EARLIER OF THE POLICY EXPIRATION DATE OR DECEMBER 31, 2014. EFFECTIVE DECEMBER 31, 2014 THE TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION ACT EXPIRES.

Terrorism Risk Insurance Program Reauthorization Act premium: $**5,163.00**

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

| Named Insured: | Endorsement Number |
|---|---|
| **Bayshore Recycling Corporation** | **17** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **EPR** | **N0915842A** | **February 16, 2014 to February 16, 2015** | **February 16, 2014** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE American Insurance Company** |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**STATE AMENDATORY ENDORSEMENTS**

It is hereby understood and agreed that the following forms are added to the policy:

| State | Title | Form Number |
|---|---|---|
| | | |
| New Jersey | New Jersey Changes-  Cancellation and NonRenewal | IL02081205 |

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

IL 02 08 12 05

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW JERSEY CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Pursuant to New Jersey law, this policy cannot be cancelled or nonrenewed for any underwriting reason or guideline which is arbitrary, capricious or unfairly discriminatory or without adequate prior notice to the insured. The underwriting reasons or guidelines that an insurer can use to cancel or nonrenew this policy are maintained by the insurer in writing and will be furnished to the insured and/or the insured's lawful representative upon written request.

This provision shall not apply to any policy which has been in effect for less than 60 days at the time notice of cancellation is mailed or delivered, unless the policy is a renewal policy.

**B.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2.** If this policy has been in effect for less than 60 days, we may cancel this policy for any reason subject to the following:

**a.** We may cancel this policy by mailing or delivering to the first Named Insured and any person entitled to notice under this policy written notice, of cancellation, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for:

**(a)** Nonpayment of premium; or

**(b)** Existence of a moral hazard, as defined in N.J.A.C. 11:1-20.2(f) as follows:

**(i)** "The risk, danger or probability that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. Any change in the circumstances of an insured that will increase the probability of such a destruction may be considered a 'moral hazard'"; and

**(ii)** "The substantial risk, danger or probability that the character, circumstances or personal habits of the insured may increase the possibility of loss or liability for which an insurer will be held responsible. Any change in the character or circumstances of an individual, corporate, partnership or other insured that will increase the probability of such a loss or liability may be considered a 'moral hazard'".

© ISO Properties, Inc., 2005

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**b.** In the notice of cancellation which is sent to the first Named Insured, we will state the reason for cancellation.

**C.** The following is added to the **Cancellation** Common Policy Condition:

**7. Cancellation Of Policies In Effect For 60 Days Or More**

**a.** If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** Existence of a moral hazard, as defined in N.J.A.C. 11:1-20.2(f);

**(3)** Material misrepresentation or nondisclosure to us of a material fact at the time of acceptance of the risk;

**(4)** Increased hazard or material change in the risk assumed which we could not have reasonably contemplated at the time of assumption of the risk;

**(5)** Substantial breaches of contractual duties, conditions or warranties that materially affect the nature and/or insurability of the risk;

**(6)** Lack of cooperation from the insured on loss control matters materially affecting insurability of the risk;

**(7)** Fraudulent acts against us by the insured or its representative that materially affect the nature of the risk insured;

**(8)** Loss of or reduction in available insurance capacity;

**(9)** Material increase in exposure arising out of changes in statutory or case law subsequent to the issuance of the insurance contract or any subsequent renewal;

**(10)** Loss of or substantial changes in applicable reinsurance;

**(11)** Failure by the insured to comply with any Federal, State or local fire, health, safety or building or construction regulation, law or ordinance with respect to an insured risk which substantially increases any hazard insured against within 60 days of written notification of a violation of any such law, regulation or ordinance;

**(12)** Failure by the insured to provide reasonable and necessary underwriting information to us upon written request therefor and a reasonable opportunity to respond;

**(13)** Agency termination, provided:

**(a)** We document that replacement coverage at comparable rates and terms has been provided to the first Named Insured, and we have informed the first Named Insured, in writing, of the right to continue coverage with us; or

**(b)** We have informed the first Named Insured, in writing, of the right to continue coverage with us and the first Named Insured has agreed, in writing, to the cancellation or nonrenewal based on the termination of the first Named Insured's appointed agent.

**(14)** Any other reasons in accordance with our underwriting guidelines for cancellation of commercial lines coverage.

**b.** If we cancel this policy based on Paragraphs **7.a.(1)** or **(2)** above, we will mail or deliver a written notice, to the first Named Insured and any person entitled to notice under this policy, at least 10 days before the effective date of cancellation. If we cancel this policy for any other reason listed above, we will mail or deliver a written notice to the first Named Insured and any person entitled to notice under this policy, not more than 120 days nor less than 30 days before the effective date of such cancellation.

**c.** In the notice of cancellation which is sent to the first Named Insured, we will state the reason for cancellation. For cancellation due to the nonpayment of premium, the notice will state the effect of nonpayment by the due date. Cancellation for nonpayment of premium will not be effective if payment of the amount due is made before the effective date set forth in the notice.

**d.** Notice will be sent to the last mailing addresses known to us, by:

**(1)** Certified mail; or

**(2)** First class mail, if we have obtained from the post office a date stamped proof of mailing showing names and addresses.

© ISO Properties, Inc., 2005
☐

**e.** We need not send notice of cancellation if you have:

    **(1)** Replaced coverage elsewhere; or

    **(2)** Specifically requested termination.

**D.** The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

**1.** We may elect not to renew this policy for any reason permitted to cancel it. If we elect not to renew this policy, we will mail a notice of nonrenewal, stating the reasons for nonrenewal, to the first Named Insured at least 30 days but not more than 120 days before the expiration date of this policy. If this policy does not have a fixed expiration date, it shall be deemed to expire annually on the anniversary of its inception.

**2.** This notice will be sent to the first Named Insured at the last mailing address known to us by:

    **a.** Certified mail; or

    **b.** First class mail, if we have obtained from the post office a date stamped proof of mailing showing the first Named Insured's name and address.

**3.** We need not mail or deliver this notice if you have:

    **a.** Replaced coverage elsewhere; or

    **b.** Specifically requested termination.

| Named Insured: | | | Endorsement Number |
|---|---|---|---|
| **Bayshore Recycling Corporation** | | | **18** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **EPR** | **N0915842A** | **February 16, 2014 to February 16, 2015** | **February 16, 2014** |
| Issued By (Name of Insurance Company) | | | |
| **ACE American Insurance Company** | | | |

## SIGNATURES

**By signing and delivering the policy to you, we state that it is a valid contract.**

### ACE AMERICAN INSURANCE COMPANY (A stock company)

436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

CARMINE A. GIGANTI, Secretary

JOHN J. LUPICA, President

Page 1 of 1

 **STARR TECHNICAL RISKS AGENCY, INC.**

## <u>IMPORTANT NOTICE</u> – TO BE KEPT WITH POLICY

**To our Brokers/Agents**

**What to do when Loss Occurs**:

1.  Report as soon as practicable, every incident, loss, or damage which may become a claim to :

    Jim Jezewski, Vice President and Claims Manager
    Starr Technical Risks Agency, Inc.
    Property Claims Department
    399 Park Avenue, 9th Floor
    New York, NY 10022
    Phone: (646) 227-6348
    FAX:    (631) 685-3061
    E-mail: Jim.Jezewski@starrcompanies.com

    (AND)

    Maylene Chua
    Senior Underwriter
    399 Park Avenue, 9th Floor
    New York, NY 10022
    Phone #: (646) 227-6315
    Fax:      (631) 685-6610
    E-mail:   Maylene.Chua@starrcompanies.com

2.  Starr Technical Risks Agency, Inc. claims <u>cannot</u> be processed through any other facility and must be reported as indicated above.

3.  Adjustors can <u>only</u> be assigned by Starr Technical Risks Agency, Inc. Property Claims Department.